UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| LOUIS P. ALBERGHINI, | ) | CIVIL ACTION NO. 04-40092-FDS |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Jonathan R. Sigel BBO# 559850 |
|  | ) | Kathryn E. Abare-O'Connell BBO# 647594 |
| SIMONDS INDUSTRIES INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Simonds Industries Inc. ("Simonds," "Defendant," or "the Company") submits

the following Memorandum of Law in Support of its Motion for Summary Judgment on all

counts of Plaintiff's Complaint.

## INTRODUCTION

Plaintiff Louis Alberghini claims that Simonds discriminated against him on the basis of

his age in violation of M.G.L. c. 151B and the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C.A. § 621 *et seq.*, when it terminated his employment as part of a reduction-

in-force ("RIF") in May 2001. As discussed below, even considering all facts in the light most

favorable to Plaintiff, all counts of his Complaint fail as a matter of law. This Court should,

therefore, enter Summary Judgment for Defendant.

## SUMMARY OF PERTINENT FACTS

Plaintiff was employed by Simonds in its Fitchburg, Massachusetts, facility from 1982

until January 2000, when he was laid off as part of a Company-wide reorganization and RIF.

(Defendant's Statement of Undisputed Facts ("Statement") at ¶ 4.) However, shortly thereafter, in February 2000, Simonds re-hired Plaintiff, who then remained employed until May 31, 2001, when he was again laid off as a result of the Company's ongoing reorganization and RIF. (Statement at ¶ 5.) At the time Plaintiff was re-hired in February 2000 (and for the duration of his employment), Simonds compensated Plaintiff at the same rate of pay (and level of benefits) which he had been receiving immediately prior to his January 2000 layoff. (Statement at ¶ 5.)

Plaintiff held the following positions at the Company: Electrical Maintenance Supervisor; Electrical Engineer; Manager of Manufacturing Services; and Project Engineer. (Statement at ¶ 6.) As Manager of Manufacturing Services, the position which he held for approximately 10 years prior to his January 2000 layoff, Plaintiff was responsible for overseeing plant services, including plant layout and maintenance. (Statement at ¶ 7.)

During the period of February 2000 through May 31, 2001 (on which date he was laid off the second time), Plaintiff held the position of Project Engineer. (Statement at ¶ 8.) As Project Engineer, Plaintiff was responsible for performing specifically assigned engineering projects related to the manufacturing process and plant maintenance, as well as updating product prints. (Statement at ¶ 10.) None of the particular duties which Plaintiff performed as a Project Engineer required mechanical engineering expertise. (Statement at ¶ 11.)

In May 2001, the Company was continuing the ongoing RIF and reorganization to implement the Simonds Operating System and "Lean Manufacturing" techniques. Prior to that time, the Project Engineer position which Plaintiff held addressed specifically assigned projects relating to the manufacturing process and plant maintenance. In May 2001, the Company determined that the Project Engineer position could be absorbed by the manufacturing sector as a whole, and that it was necessary to focus more on product-related engineering (such as

metallurgy, product development and quality and machine design). (Statement at ¶ 9.) Accordingly, on May 31, 2001, the Project Engineer position was eliminated and Plaintiff was laid off. (Statement at ¶¶ 9, 15.)

At the time of his layoff on May 31, 2001, Plaintiff was presented with, among other things, a release of claims form that he was required to sign if he chose to receive four months of severance pay and benefits from Simonds. (Statement at ¶ 16.) Because Plaintiff signed the release document, Simonds paid Plaintiff four months of compensation and continued his employee benefits for that same period of time. (Statement at ¶ 18.)

Plaintiff contends that the Company hired or appointed other individuals to replace him after his layoff in May 2001. That allegation is false. Since his layoff, Simonds has neither reinstated the Project Engineer position nor hired anyone to replace Plaintiff. (Statement at ¶ 14.) In fact, the kinds of duties formerly performed by Plaintiff (during his approximately 16-month tenure as a Project Engineer) are no longer performed as specific engineering projects. Instead, those functions are performed generally by the manufacturing sector. (Statement at ¶ 15.)

In June 2001, approximately one month after Plaintiff's layoff, the former head of the engineering department, Raymond Edson (age 58 at the time; d.o.b. 2/26/43), Director of Manufacturing Engineering, voluntarily retired from Simonds so that he could engage in the real estate business. (Statement at ¶ 19.) In addition, at about the same time, the Engineering Manager, Steve Niemi (age 31 at the time; d.o.b. 7/29/69), resigned. (Statement at ¶ 20.) As a result, in June 2001, Richard Brault (age 50 at the time; d.o.b. 9/2/52), who had been employed by Simonds as a Senior Product Engineer since August 2000, was promoted to the position of Engineering Manager to replace Mr. Niemi. (Statement at ¶ 21.)

After the layoffs and the Edson and Niemi resignations, the engineering department soon found itself with insufficient staffing. (Statement at ¶ 23.) Simonds then assessed the specific needs of its very lean and redirected engineering department. The Company determined that its primary needs related to product/manufacturing engineering (e.g., metallurgy, product development and quality, and machine design) rather than project-based general engineering. (Statement at ¶ 24.)

Accordingly, during the summer of 2001, Simonds hired two Product Engineers (a/k/a Manufacturing Engineers) - Peter Duperry (age 23 at the time; d/o/b 2/23/78) and Salvatore Santoro (approximately age 55 at the time; d/o/b 8/29/46). (Statement at ¶ 25.) Not long after Simonds hired Salvatore Santoro, he became the Quality Manager in Simonds' Fitchburg facility, which position he still holds. The Company's previous Quality Manager, William Baker, was 49 years old (i.e., several years younger than Mr. Santoro) at the time Mr. Baker was laid off in May 2001. As Quality Manager, Mr. Santoro's primary duties involve overseeing and improving all of the facility's quality control functions. He is also responsible for ensuring that the Company remains compliant with "ISO 9000" (i.e., international standardization) requirements. (Thibodeau Aff. at ¶ 21; Jordan Dep. II at 68-69.) Jeremy Dexter (age 23 at the time of Plaintiff's May 2001 layoff; d.o.b. 9/23/77) had been an intern at Simonds for several months in 1998 and 1999. Mr. Dexter became a regular, full-time employee almost one year prior to Plaintiff's May 2001 layoff, and is a Manufacturing Engineer/Process Metallurgist. (Statement at ¶ 27.)

Messrs. Duperry, Santoro and Dexter all have Bachelor of Science degrees in Mechanical Engineering. (Statement at ¶ 28.)

Peter Duperry (Product Engineer) is no longer employed by the Company. On August 9, 2004 and November 8, 2004, respectively, the Company hired Anthony Maietta (age 22 at the time; d.o.b. 3/28/82) and Joseph Markowicz (age 50 at the time; d.o.b. 6/15/54) as Process Engineers (i.e., the position which was formerly known as "Product Engineer"). (Thibodeau Aff. at ¶¶ 24 and 25.)

## PROCEDURAL HISTORY

On or about November 23, 2001, Plaintiff filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"), alleging discriminatory termination of employment on the basis of his age. (A true and complete copy of the MCAD complaint is attached to Defendant's Statement as Exhibit G.) On or about September 8, 2003, after the parties engaged in the discovery process and the MCAD's investigation, the MCAD issued a finding of Lack of Probable Cause. (A true and complete copy of that decision is attached to Defendant's Statement as Exhibit H.) Plaintiff appealed the dismissal, and the MCAD upheld its finding of Lack of Probable Cause on December 17, 2003. (A true and complete copy of that decision is attached to Defendant's Statement as Exhibit I.)

On or about May 26, 2004, Plaintiff filed a complaint with this Court, alleging four counts of unlawful conduct:  Count I (Age Discrimination in violation of M.G.L. c. 151B); Count II (Age Discrimination in violation of the Age Discrimination in Employment Act); Count III (Violation of the Older Workers Benefit Protection Act); and Count IV (Violation of the Civil Rights Act of 1991).

Defendant contends that it is entitled to summary judgment on all counts of Plaintiff's Complaint.

## ARGUMENT

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); See Seaboard Surety Co. v. Greenfield Middle Sch. Bldg. Comm., 370 F.3d 215, 218 (1st Cir. 2004); Euromotion, Inc. v. BMW of North America, Inc., 136 F.3d 866, 869 (1st Cir. 1998). Once a moving party has demonstrated the absence of material fact, the burden falls to the non-moving party to place at least one material fact into dispute. Mendes v. Medtronic, Inc., 18 F.3d 13, 15 (1st Cir. 1994), discussing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Where, as here, the non-moving party bears the ultimate burden of persuasion, he can only defeat summary judgment by demonstrating evidence sufficient to establish each of the elements essential to his case. See Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 268 (1st Cir. 1994).

For a non-moving party to overcome summary judgment, "it must present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." Carroll v. Xerox Corporation, 294 F.3d 231, 237 (1st Cir. 2002), quoting Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993). Mere allegations are insufficient to raise a genuine issue of material fact and insufficient to overcome summary judgment. Even where, as here, "elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Lehman v. Prudential Ins. Co. of America, 74 F.3d 323, 327 (1st Cir. 1996), quoting Medina-Munoz v. R.J. Reynolds Tobacco, Co., 896 F.2d 5, 8 (1st Cir. 1990); Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994); August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992); Reidy v. Travelers Ins. Co., 928 F. Supp. 98, 104 (D. Mass. 1996); LaLonde v.

Eissner, 405 Mass. 207, 209 (1989). Moreover, "a party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition." Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 35 (1st Cir. 2001).

Even in cases, such as the present case, in which the ultimate issue on some counts is a question of "intent," summary judgment is appropriate where Plaintiff is unable "to point to specific competent evidence to support his claim." August, 981 F.2d at 580. See, e.g., Phelps v. Optima Health, Inc., 251 F.3d 21, 28 (1st Cir. 2001)(affirming summary judgment); Reidy, 928 F. Supp. at 104 (D. Mass. 1996)(granting summary judgment).

Here, even considering all facts in the light most favorable to Plaintiff, all counts of his Complaint fail as a matter of law, and this Court should enter summary judgment for Defendant.

I.    **COUNTS I AND II (AGE DISCRIMINATION UNDER M.G.L. C. 151B AND THE ADEA) FAIL AS A MATTER OF LAW.**

Plaintiff claims that he was discriminatorily terminated on the basis of his age. Because Plaintiff cannot point to any *direct* evidence of age discrimination and must instead rely upon *circumstantial* evidence, the McDonnell Douglas framework utilized in Title VII employment discrimination cases governs his claim. See, e.g., Mesnick v. General Electric Co., 950 F.2d 816, 823 (1st Cir. 1991) (applying McDonnell Douglas framework in connection with ADEA and Chapter 151B claims of disability discrimination). The McDonnell Douglas framework provides for three distinct stages of analysis: (1) the plaintiff must carry his burden of establishing each element of a prima facie case; (2) if he presents a prima facie case, the burden then shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for the adverse employment action (in this case, termination); and (3) if the employer presents such evidence of a legitimate, nondiscriminatory reason, then the burden shifts back to Plaintiff to

prove that discrimination was the determinative (i.e., "but for") cause of the termination.[1] See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 146-47 (2000); Lipchitz v. Raytheon Co., 434 Mass. 493, 504-05 (2001). This three-stage order of proof is applied similarly in both ADEA cases (i.e., cases analyzed pursuant to federal law) and Chapter 151B cases (i.e., cases analyzed under state law). See Fite v. Digital Equipment Corp., 232 F.3d 3, 7 (1st Cir. 2000). Under both federal and state law, the burden of proof of unlawful discrimination remains at all times with Plaintiff. See Laurin, 150 F.3d at 58, quoting Dichner v. Liberty Travel, 141 F.3d 24, 30 (1st Cir. 1998); Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 118 (2000).

### A.    Plaintiff Has Failed to Demonstrate A Prima Facie Case of Age Discrimination.

To establish a prima facie case of age discrimination in the context of a reduction-in-force, Plaintiff must establish each of the following: (1) he was at least forty years old; (2) he met the Company's legitimate job expectations; (3) he was terminated; and (4) the Company failed to treat age neutrally or retained younger persons with similar or lesser qualification in the same position. See Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 384 (1st Cir. 2000). For purposes of his claim under M.G.L. c. 151B, "a plaintiff in a reduction in force case may satisfy the fourth element of [his or] her prima facie case by producing some evidence that [his or] her layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination." Sullivan v. Liberty Mutual Insurance Company, 444 Mass. 34, 45 (2005).

---

[1]    One method for a plaintiff to demonstrate "determinative cause" requires the plaintiff to show that the nondiscriminatory reason given by the employer was not the real reason for the termination decision; if the plaintiff makes such a showing, both state and federal law would permit (but not require) a fact finder to infer discrimination. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143, 146-47 (2000); Lipchitz v. Raytheon Co., 434 Mass. 493, 502 (2001). Here, Plaintiff cannot present any evidence whatever to cast doubt upon the Company's stated reason for its decision, and, therefore, Plaintiff is not entitled to such an inference. See infra.

Failure to demonstrate any *one* of these elements is fatal to Plaintiff's claim. See Beal, 419 Mass. at 544 (1995)("[T]o avoid a grant of summary judgment ... the [nonmoving party] must establish ... a reasonable expectation of proving *each element* of a prima facie case of ... discrimination.")(Emphasis added.).

Assuming, for purposes of this Motion only, that Plaintiff can meet the first three elements of the prima facie case, he cannot satisfy the fourth element because he can proffer no evidence to suggest either (1) that the Company failed to treat age in a neutral manner, or (2) that the Company retained a similarly or less qualified younger employee in his position, or (3) that his layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination.  Even with a generous view of the evidence, Plaintiff cannot satisfy the fourth element of the prima facie case.

1.    *The Company Treated Age In A Neutral Manner.*

As to the first prong, Plaintiff cannot produce any evidence to show that the Company failed to treat age neutrally in implementing its RIF.  Indeed, all the record evidence shows that age was not a factor, nor was it even considered, in determining who would be selected for layoff. (Depositions of John Jordan taken on March 14, 2005 ("Jordan Dep. II"), portions of which are attached hereto as Exhibit D, at 25, 26-27, 86-87.)[2]  Moreover, after the May 2001 reduction-in-force, the majority of Simonds' employees at the Fitchburg facility were age 40 and over. In fact, by December 2002, 70 of Simonds' 81 employees at the Fitchburg facility were age 40 and over.  (Thibodeau Aff. at ¶ 26.)  Accordingly, Plaintiff cannot demonstrate that Simonds failed to treat age neutrally in conducting its May 2001 reduction-in-force.

---

[2]    John Jordan was the Product Group Manufacturing Manager (wood and paper products and power tool accessories) at Simonds' Fitchburg plant from January 2001 until his retirement in September 2001.

2.    _The Company Never Replaced Plaintiff._

Similarly, Plaintiff cannot produce any evidence to demonstrate that the Company retained a similarly or less qualified younger employee in his position. First, the undisputed evidence is that Plaintiff was <u>never</u> replaced after his layoff in May 2001. (Thibodeau Aff. at ¶ 10.) Plaintiff claims that the Company "hired Richard Brault (age 49) on August 14, 2000, Jeremy Dexter (age 24) on July 17, 2000 and Peter Duperry (age 24) on July 23, 2001." (Complaint at ¶ 9.) Plaintiff further contends that "[T]hese employees who are younger than plaintiff were retained by defendant or hired by defendant after plaintiff was terminated, and assumed certain job duties and projects of plaintiff after plaintiff was terminated on May 31, 2001." (Complaint at ¶ 9.)

The fact that Simonds may have consolidated duties or allocated the duties of laid off employees to other employees does not by itself raise a reasonable inference of discrimination. See <u>Lewis</u> v. <u>City of Boston</u>, 321 F.3d 207, 216 (1st Cir. 2003) (holding that under M.G.L. c. 151B, "[m]erely demonstrating that, as a result of the reduction in force, the employer consolidated positions or allocated duties of discharged employees to other existing employees does not itself raise a reasonable inference that the employer harbored discriminatory animus toward any one employee. ... [W]e are saying that the employee must come forward with something more than evidence of the inevitable transfer of his or her responsibilities to existing employees."); <u>LeBlanc</u> v. <u>Great American Ins. Co.</u>, 6 F.3d 836, 844 (1st Cir. 1993); <u>Shenker</u> v. <u>Lockheed Sanders, Inc.</u>, 919 F. Supp. 55, 60 (D. Mass. 1996) ("In the context of a reduction in force, the redelegation must involve more than the decision to discontinue certain functions, the assignment of another employee 'to perform the plaintiff's duties in addition to [prior] duties,' or the 'redistribut[ion] among other existing employees already performing related work.'")

**3.**    **_Plaintiff Cannot Demonstrate That He Was Similarly Or More Qualified Than Peter Duperry or Jeremy Dexter._**

Plaintiff asserts that he "was equally qualified to perform certain engineering positions that the defendant alleges it restructured and in which younger employees were retained or hired for those positions or performed or assumed those job duties." (Complaint at ¶ 13.) However, the undisputed evidence demonstrates that Plaintiff was not similarly or more qualified for the positions that Duperry, Dexter, Santoro and Brault performed at the Company.

Plaintiff, an electrical engineer, was a <u>Project</u> Engineer (which position he only held during the last 16 months of his employment). Messrs. Dexter and Duperry, both mechanical engineers, were <u>Product</u>/Manufacturing Engineers. As Product/Manufacturing Engineers, Mr. Dexter is (and Mr. Duperry was) primarily responsible for modifying, designing and troubleshooting machinery in order to improve the manufacturing process; ensuring product quality, implementing process and product improvements; and research and development. (Duperry Dep. at 50.) The Product/Manufacturing Engineer position requires a substantial amount of computer skills and mechanical engineering expertise. (Duperry Dep. at 61-62). In addition to having a degree in Mechanical Engineering, Mr. Duperry has specialized training and prior work experience in machine design. (Thibodeau Aff. at ¶ 23 and <u>Exhibit 3</u> attached thereto.)

Mr. Dexter was an intern at Simonds for several months in 1998 and 1999 and was hired as a regular employee almost one year prior to Plaintiff's May 2001 layoff. In addition to his principal duties as a Product/Manufacturing Engineer, Mr. Dexter is responsible for performing metallurgical assignments. (Jordan Dep. II at 65.) Mr. Dexter's particular qualification for such assignments (i.e., his Material Science expertise and related work experience) was another important reason Simonds retained him. (Thibodeau Aff. at ¶ 23 and <u>Exhibit 5</u> attached thereto;

Jordan Dep. II at 54.)[3]  In short, based upon their educational backgrounds and work experience,

Messrs. Duperry, Dexter and Santoro (as discussed further below) were highly qualified to

perform their product/manufacturing engineering duties at Simonds.

Plaintiff, an <u>Electrical</u> Engineer, was/is simply not qualified to be a

Product/Manufacturing Engineer, notwithstanding his conclusory allegations to the contrary.  At

his deposition, Plaintiff admitted that he has <u>never</u> held the positions of mechanical engineer,

metallurgist, product engineer or manufacturing engineer.  (Alberghini Dep. I at 26.)  In fact,

Plaintiff also testified that he did not even <u>know</u> the duties of a Manufacturing Engineer.

(Alberghini Dep. I at 110-111.)  Furthermore, Plaintiff admitted that it would be beneficial for a

person performing the position of a Product/Manufacturing Engineer at Simonds to have

experience as a mechanical engineer or a degree in mechanical engineering.  (Alberghini Dep. I

at 112; Alberghini Dep. II at 85-86.)  Indeed, John Jordan, the Product Group Manufacturing

Manager (wood and paper products and power tool accessories) at Simonds' Fitchburg plant

from January 2001 until September 2001, also testified that a mechanical engineering position

usually requires a degree and is substantially different from an electrical engineer.  (Jordan Dep.

II at 55-57.)

Despite his lack of such qualifications, Plaintiff apparently claims that he was as qualified

or more qualified than Mr. Duperry to be a Product/Manufacturing Engineer simply based upon

the number of years he had been employed with the Company and because he "knew" the plant,

---

[3]        On page 2 of Plaintiff's letter to the Commission dated June 11, 2002, he essentially admits that
he is not qualified to perform Mr. Dexter's job: "While it is true that Mr. Alberghini has no metallurgy
experience, there is no indication that [he] could not have performed the positions of Mr. Duperry, Mr.
Santoro or Mr. Brault for that matter."  (See Plaintiff's Letter to MCAD Investigator, Angela Robertson
dated June 11, 2002, attached to Defendant's Statement as <u>Exhibit J</u>, last paragraph.)  At his deposition,
Plaintiff admitted that he is not qualified to perform the duties of a metallurgist. (Alberghini Dep. I at
118-119.)

the machines and the products. (Alberghini Dep. I at 112; Alberghini Dep. II at 85-86.) However, such familiarity does not make him qualified to perform the job of a Product/Manufacturing Engineer at Simonds.

Plaintiff may argue that the job descriptions for the *Product* Engineer (Messrs. Duperry and Dexter) and *Project* Engineer (Plaintiff) positions are similar, and that such similarity shows that he was qualified to be a Product/Manufacturing Engineer. That argument is completely without merit. *Product*/Manufacturing Engineers are required to perform certain tasks which a *Project* Engineer might also be qualified to do. However, the duties and qualifications set forth in the Product Engineer description are much more comprehensive than those in the Project Engineer description. Furthermore, although not specifically stated on the Product Engineer job description (which, as Mr. Duperry testified, is somewhat outdated), the primary duties of a Product Engineer require Mechanical Engineering expertise. (Duperry Dep. at 46, 59.) None of the duties performed by Plaintiff during his relatively brief tenure as a Project Engineer required such expertise. Furthermore, as an electrical engineer, Plaintiff could not provide such expertise. Moreover, the fact that Product/Manufacturing Engineers are qualified to and do, in fact, perform the types of *ad hoc* project functions formerly performed by Project Engineers further supports the Company's decision to consolidate their functions and eliminate the Project Engineer position.

### 4. Plaintiff Cannot Demonstrate That He Was Similarly Or More Qualified Than Richard Brault.

Plaintiff contends that Simonds should have retained Plaintiff as the Engineering Manager, instead of Richard Brault. However, Richard Brault was not qualified for that position. As the Engineering Manager, Mr. Brault, who is 52 years old and was 48 years old at the time he became Engineering Manager, is responsible for providing the necessary support to the

manufacturing group to maintain and improve all manufacturing processes in Simonds' Fitchburg plant.[4] (Thibodeau Aff. at ¶ 17 and <u>Exhibit 2</u> attached thereto.) Mr. Brault is responsible for supervising the plant's Manufacturing Engineers and the Quality Manager. (Thibodeau Aff. at ¶ 17 and <u>Exhibit 2</u> attached thereto.)

Not only does Mr. Brault have a Bachelor of Arts Degree in Manufacturing Management, he also had substantial prior supervisory and management experience before coming to Simonds. Notably, unlike Plaintiff's supervisory experience, Mr. Brault's supervisory experience included supervision of <u>Manufacturing Engineers</u>. (Thibodeau Aff. at ¶ 17 and <u>Exhibit 2</u> attached thereto; Brault Dep. at 44-45). Furthermore, Mr. Brault has substantial prior work experience as both a Manufacturing Engineer and Manager of Quality Assurance. (Thibodeau Aff. at ¶ 17 and <u>Exhibit 2</u> attached thereto.) Plaintiff, on the other hand, has had <u>no experience</u> in those positions. (Alberghini Dep. I at <u>Exhibit 2</u>.) Mr. Brault's experience in those jobs is critical to his ability to supervise those positions in his role as Engineering Manager. Indeed, Plaintiff admitted that prior experience performing the job of a Manufacturing Engineer would be beneficial to the ability to perform the Engineering Manager position. (Alberghini Dep. I at 124-125)

In arguing that he should have (or could have) replaced Mr. Brault as the Engineering Manager, Plaintiff may claim that he has had experience supervising "engineering personnel." Especially given the particular duties of the Engineering Manager position, that claim is completely disingenuous. The only positions which reported to Plaintiff during his employment at Simonds were the Facilities Manager, the Methods (a/k/a Environmental) Engineer and the Manager of Maintenance. At his deposition, Plaintiff admitted that the Manager of Maintenance

---

[4]    The fact that Simonds promoted Mr. Brault (age 49 at the time) to the position of Engineering Manager to replace Steve Niemi (age 31 at the time) is further evidence that the Company does not discriminate against older employees.

job is not considered an "engineering" position, and that the Methods Engineer and Facilities

Manager positions do not involve product/manufacturing engineering duties. (Alberghini Dep. I

at 47-49)[5]

5.    ___Plaintiff Cannot Demonstrate That He Was Similarly Or More Qualified Than___
      ___Salvatore Santoro.___

In addition to having a Bachelor of Science degree in Mechanical Engineering,

Mr. Santoro, who was 55 years old at the time and is now 58 years old, had many years of

experience as a Manager of Manufacturing, Senior Manufacturing Engineer and Quality

Assurance Manager prior to joining Simonds. (Thibodeau Aff. at ¶ 21 and Exhibit 4.)  Although

Mr. Santoro was originally hired into a Product Engineer position, his particular skills and

experience soon resulted in his becoming the Company's Quality Manager in the Fitchburg

facility. (Thibodeau Aff. at ¶ 21.)  As Quality Manager, his primary duties involve overseeing

and improving all of the facility's quality control functions, and he is responsible for ensuring

that the Company remains compliant with "ISO 9000" (i.e., international standardization)

requirements. (Thibodeau Aff. at ¶ 21.)  Unlike Mr. Santoro, Plaintiff has never performed the

job of Quality Assurance Manager, and is not qualified for such a position. (Alberghini Dep. I at

Exhibit 2.)

In summary, the vast majority of Plaintiff's duties during his entire employment with

Simonds involved electrical engineering and facilities maintenance and management – not

product/manufacturing engineering, machine design, metallurgy, quality assurance or the

management of such functions.  Moreover, his tenure as a Project Engineer was relatively brief.

___

[5]      Even assuming *arguendo* that Plaintiff was qualified to perform the jobs performed by Messrs.
Brault or Dexter, the mere retention of younger employees in such other jobs (i.e., jobs which Plaintiff
had not held) is not sufficient to establish a *prima facie* case.  Dougherty v. Blue Cross Blue Shield of
Massachusetts, Inc., 966 F. Supp. 80, 87 (D. Mass. 1996), quoting LeBlanc v. Great American Ins. Co.,
6 F.3d 836, 844 (1st Cir. 1993), cert. denied 511 U.S. 1018 (1994).

Not surprisingly, Plaintiff's stated objective regarding future employment, as indicated on the résumé he filed with the MCAD, was to obtain facility maintenance/management positions, rather than product/manufacturing engineer positions. (Alberghini Dep. I at <u>Exhibit 2</u>.) Indeed, Plaintiff testified at his deposition that, in seeking employment following his departure from Simonds, <u>he has not applied for any mechanical, product or manufacturing engineering positions</u>. (Alberghini Dep. I at 25-26) Tellingly, Plaintiff admitted that the reasons he has not applied for such positions are because his qualifications, experience and skills are not commensurate with those positions and because employers seeking to fill such jobs require at least 5 to 10 years prior experience working in such positions, which Plaintiff does not have. (Alberghini Dep. I at 25-26.)

For the above reasons, Plaintiff cannot satisfy his burden of proving that Simonds failed to treat age neutrally or retained similarly or less qualified younger persons in the same position, or that his layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination. Accordingly, since Plaintiff cannot satisfy the fourth element of the prima facie case, the Court should grant Defendant's Motion for Summary Judgment and dismiss Counts I and II of Plaintiff's Complaint.

**B.    <u>The Company Has Presented Evidence Of A Legitimate, Nondiscriminatory Reason For The Termination of Plaintiff's Employment.</u>**

Even assuming, *for the purposes of this Motion only*, that Plaintiff can establish a prima facie case of age discrimination, the Company has rebutted the prima facie case by presenting evidence of a legitimate, nondiscriminatory reason for the termination of his employment: his position was eliminated as part of Simonds' RIF in May 2001. It is undisputed that the Company

conducted RIFs from 2000 through 2003 in an effort to reduce costs.[6] (Thibodeau Aff. at ¶¶ 4-6.) For legitimate and compelling business reasons, Simonds was forced to undergo a comprehensive reorganization and RIF in order to survive. The Company conducted a very detailed and thorough analysis of its workforce and made the determination that certain jobs could be eliminated to reduce costs and increase productivity. The RIF resulted in the elimination of approximately 300 jobs (union and non-union) throughout all of Simonds' facilities, both domestic and international, and the closure of manufacturing facilities in California and the United Kingdom. (Thibodeau Aff. ¶ 6.) Plaintiff was one of those employees terminated pursuant to this ongoing RIF. (Thibodeau Aff. at ¶ 7.) The elimination of Plaintiff's position was based on legitimate, nondiscriminatory reasons.

Plaintiff, as Project Engineer, had been assigned specific projects relative to the manufacturing process and plant maintenance. As part of the ongoing RIF and reorganization to implement the Simonds Operating System and "Lean Manufacturing" techniques, the Company determined that the function of the Project Engineer position could be absorbed by the manufacturing sector as a whole, and that it was necessary for the Company to focus more on product-related engineering (such as metallurgy, product development and quality and machine design). (Thibodeau Aff. at ¶ 8.) Accordingly, the Company has presented a legitimate, nondiscriminatory reason for the elimination of Plaintiff's position. Plaintiff was the only employee occupying the position of Project Engineer in the Company's Fitchburg facility. (Thibodeau Aff. at ¶ 9.)

---

[6]    The evidence regarding the reason for Plaintiff's layoff both prevents Plaintiff from establishing his prima facie case and constitutes Defendant's evidence of a legitimate nondiscriminatory reason which rebuts the prima facie case if it had been made.

After the employer presents a legitimate, nondiscriminatory reason for the termination decision, any inference of discrimination disappears from the case. The burden then shifts to the Plaintiff to demonstrate, in the summary judgment context, that a genuine issue of material fact exists as to whether age discrimination was the determinative cause of his discharge. See Benoit v. Technical Mfg. Corp., 331 F.3d 166, 174 (1st Cir. 2003), quoting Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001) ("Where, as here, the employer proffers a nondiscriminatory reason for its action, the burden shifts back to the plaintiff to show that the reason ... was 'a coverup' for a 'discriminatory decision.'"); Lipchitz, 434 Mass. at 507-508. See also Reeves, 530 U.S. at 142-143; Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996); Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997). Plaintiff cannot meet this burden.

C.  **Plaintiff Cannot Demonstrate, Or Raise A Genuine Issue Of Material Fact, That The Company's Asserted Reason Is False Or That Age Discrimination Was The Determinative Cause Of His Termination.**

Plaintiff cannot offer any evidence that Simonds' legitimate, nondiscriminatory reason for his layoff is untrue or pretextual or that age discrimination was the determinative cause of the decision. Rather, the summary judgment record is replete with undisputed evidence supporting Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

Simonds is not required to prove that its reasons for choosing Plaintiff for layoff were correct, but only that they were not a pretext for discrimination. "...[A]n employer [is not] required to adopt the policy that will maximize the number of minorities, women or older persons in his workforce." Loeb v. Textron, Inc. 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979). See Pages-Cahue v. Iberia Lineas Aereas de Espana, 82 F.3d 533, 538-39 (1st Cir. 1996) (employer is not required to terminate younger employees so as to create a job opening for an older individual.) "It is not the province of the courts to sit as 'super personnel departments assessing

the merits – or even the rationality – of employers' nondiscriminatory business decisions.'" Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1118 n.4 (1st Cir. 1993), *quoting* Mesnick v. General Electric Co., 950 F.2d 816, 825 (1st Cir. 1991), *cert. denied* 504 U.S. 985 (1992). "The 'ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age.'" *Id.* See also Lehman, 74 F.3d at 329, *quoting* Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993) ("[U]nless disparities ... are so apparent as virtually to jump off the Page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question."). "'The reasons given for a decision may be unsound or even absurd,' and the action may appear 'arbitrary or unwise,' nonetheless the defendant has fulfilled its obligation." Matthews, 426 Mass. at 128, *quoting* Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 766-68 (1986). "The defendant is not required to persuade the fact finder that it was correct in its belief." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45 (1st Cir. 2002).

The uncontroverted testimony in this case is that age was not a factor in selecting Plaintiff or any of the many other employees for layoff. (Thibodeau Aff. at ¶¶ 4-6; Jordan Dep. II at 24-25.) It is settled law that, to defeat Defendant's motion for summary judgment, Plaintiff must offer more than a mere assertion of his age and the unsupported allegation that there is a conflict in the evidence regarding the Company's legitimate, nondiscriminatory reason for discharge. See Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 13 (1st Cir. 2001) (upholding summary judgment in favor of employer where "there is a telling lack of substantial specific evidence that [plaintiff] was treated differently from younger but otherwise similarly situated employees."); Dorman v. Norton Company, et al., 64 Mass.App.Ct. 1, 5 (2005) ("The plaintiff

cannot avoid summary judgment merely by speculating that his treatment by the employer came about not because of the merits of his performance as the employer observed it, but rather because of impermissible consideration of his age. The third-stage burden of proof requires more than that. Accordingly, there being a failure of proof that age was in any way a motivating factor, summary judgment for the defendants on this count was correctly entered."); Bruce v. Town of Wellesley, 47 Mass. App. Ct. 880, 806 (1999), *citing* Wooster v. Abdow Corp., 46 Mass. App. Ct. 665, 671 (1999) (judgment notwithstanding verdict appropriate where "[o]ther than the undisputed fact that the plaintiff was over age forty at the time he was discharged, there was no showing that the town was concerned about the plaintiff's age"); Finney v. Madico, Inc., 42 Mass. App. Ct. 46, 49 (1997) ("The conflict must be genuine, i.e., the proponent cannot establish it by simply saying so ...").

### 1.    *Plaintiff Was In The Protected Age Group At The Time Simonds Rehired Him In January 2000.*

The undisputed evidence demonstrates that the Company rehired Plaintiff in February 2000, when Plaintiff was age 59. (Thibodeau Aff. at ¶ 7; Jordan Dep. II. at 33, 101-102; Alberghini Dep. I at 100; Alberghini Dep. II at 66.) Indeed, Plaintiff was rehired approximately one month after his first layoff in January 2000, with no loss of pay or benefits, and was retained for approximately sixteen months in that position. (Alberghini Dep. I at 98.) The fact that Simonds rehired Plaintiff for another position when he was age 59 is further evidence that the Company did not harbor a discriminatory animus against Plaintiff on the basis of his age. Such circumstances clearly negate the presence of discriminatory animus. See LeBlanc v. Great American Insurance Company, 6 F.3d 836, 847 (1st Cir. 1993) ("[plaintiff] points to nothing in the record to suggest why [the decisionmaker], who, in January 1989, approved [plaintiff's transfer] ... and his corresponding pay raise, would develop an aversion to

older people less than two years later...."); <u>Montlouis</u> v. <u>Pirus Networks, Inc.,</u> 19 Mass. L. Rptr. 277, 281 (Mass. Super. Mar. 15, 2005) (upholding summary judgment in favor of employer on race/ethnicity discrimination claim "consider[ing] that [same decisionmaker whom plaintiff claimed discriminated against him had] recommended that [he] be hired following his interview, presumably knowing [his race/ethnicity]"); <u>Rattigan</u> v. <u>Copley Plaza Hotel Ltd. Partnership</u>, 21 M.D.L.R. 68, 72 (1999) (Hearing Officer found that the employer would not have made such efforts to retain plaintiff as an employee "if its plan was to force him out of his job, or to terminate him").

2.   *Plaintiff's Opinion That He Should Have Been Retained In Various Positions At The Company Does Not Establish Pretext Or Support An Inference Of Discrimination.*

Plaintiff's assertion that he should have been retained rather than Duperry, Dexter, Santoro or Brault is insufficient to defeat Defendant's Motion for Summary Judgment. <u>See</u> <u>Shorette</u> v. <u>Rite Aid of Maine, Inc.,</u> 155 F.3d 8, 15 (1st Cir. 1998) (noting that a plaintiff's "personal opinion regarding his own job qualifications is not sufficiently probative on the issue of pretext.)

Plaintiff does not argue that Simonds' decision to eliminate his position was per se unreasonable or in conflict with Company policies. Instead, Plaintiff argues only that the Company was "morally" obligated to lay people off in order of juniority, or "first in last out ...that's the moral thing to do." (Alberghini Dep. I at 86.). Moreover, despite arguing that he could have performed the mechanical engineering duties required of a Product/Manufacturing Engineer, Plaintiff admits that Simonds did not consider him to be a mechanical engineer. (Alberghini Dep. II at 36.) Accordingly, even if Plaintiff were able to establish that Simonds was incorrect in its belief that he was not able to do the jobs that Dexter, Duperry, Santoro and

Brault performed, that would not be sufficient to defeat summary judgment. To the contrary, the correctness of Simonds' belief that Plaintiff was unable to perform mechanical engineering duties is not at issue. Like the plaintiff in Sullivan v. Liberty Mutual Insurance Co., Plaintiff cannot produce credible evidence to challenge Defendant's genuine belief that Plaintiff was not qualified for those other positions:

> ... even were we to conclude that [plaintiff] neither mishandled the environmental case nor was responsible for the difficulties that arose with her support staff, these facts do not establish that Liberty's stated reasons for terminating her were pretextual. There is ample, uncontroverted evidence that the negative impression Latronico, staff in the environmental unit, and others had formed of [plaintiff's] abilities was a primary reason she was selected for layoff. ...[Plaintiff] does not challenge whether Latronico truly believed that her mishandling of the environmental case jeopardized the Boston office's ability to retain environmental cases during a period of declining caseloads.

444 Mass. 34, 56-57 (2005); see also Dorman v. Norton Company, et al., 64 Mass.App.Ct. 1, 5 (2005) ("... the plaintiff confuses the alleged falsity of [the report of misconduct] with the falsity ... of the reasons given by the employer for his discharge. It is the latter that is significant ... and there is no evidence here that the defendants discharged the plaintiff on the basis of a report that they knew to be false"). In short, it is not the correctness but the truthfulness of Defendant's belief that is the crucial issue. Plaintiff cannot produce evidence to cast doubt on the truthfulness of Defendant's belief.

For the foregoing reasons, this Court should enter summary judgment for the Company on Counts I and II of the Complaint.

## II.    COUNT III (OWBPA CLAIM) FAILS AS A MATTER OF LAW.

In Count III of his Complaint, Plaintiff claims that he suffered damages because the Company's waiver form did not comply with the Older Workers Benefit Protection Act ("OWBPA"). (Complaint ¶ 24.) Specifically, Plaintiff alleges that the Company's waiver form

did not include a 21-day review period, did not specifically waive age discrimination claims, and did not include a list of employees affected by the RIF. (Complaint ¶ 15).

In dismissing a claim brought for violation of the OWBPA, the U.S. District Court of Massachusetts held that "[t]here is no measure of damages deriving from an invalid waiver that is separate and distinct from an employee's interest in escaping age discrimination. [Plaintiff's] claim for damages deriving from [the Defendant Company's] OWBPA violations themselves, without more, cannot stand." Commonwealth of Massachusetts v. Bull HN Info. Systems, 143 F. Supp.2d 134, 158 (D. Mass. 2001), citing Piascik-Lambeth v. Textron Automotive Co., Inc., 2000 WL 1875873 (D. N.H. 2000) (unpublished decision). See also Whitehead v. Oklahoma Gas & Elec. Co., 187 F.3d 1184, 1191-92 (10th Cir. 1999); EEOC v. Sara Lee Corp., 923 F. Supp. 994, 999 (W.D. Mich. 1995); EEOC v. Sears, Roebuck & Co., 883 F. Supp. 211, 215 (N.D. Ill. 1995). In other words, even if Plaintiff can show that the Company's waiver form did not meet OWBPA standards, there is no separate cause of action or damages under the OWBPA.

Thus, Count III fails as a matter of law, and Simonds is entitled to summary judgment.

### III.    COUNT IV (CLAIM UNDER THE CIVIL RIGHTS ACT OF 1991) FAILS AS A MATTER OF LAW.

In Count IV, Plaintiff alleges a claim under the Civil Rights Act ("CRA") of 1991 (42 U.S.C. §1981(a)) for the Company's alleged age discrimination. (Complaint ¶ 26). Simonds submits that the CRA does not create a separate cause of action. Instead, the CRA simply amends preexisting statutes, including the ADEA, which provide causes of action for discrimination in employment.

In adopting the CRA of 1991, Congress stated its purpose as follows:

> to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace; ... to codify the concepts of "business necessity" and "job related"...; to confirm statutory

> authority and provide statutory guidelines for the adjudication of disparate impact suits under title VII ...; and to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination.

42 U.S.C. §1981(a) note.

The First Circuit has not addressed specifically whether the CRA of 1991 provides a separate cause of action. However, one court that has addressed this specific question held that "the Civil Rights Act of 1991 merely creates an additional remedy for actions brought under Title VII. ... It does not ... create a distinct cause of action ... ." Varner v. Illinois State Univ., 150 F.3d 706, 718 (7th Cir. 1998). In addition, courts routinely recognize that the "the purpose of the CRA of 1991 ... was to restore civil rights protections that had been limited by the Supreme Court and to strengthen the protection and remedies of Federal civil rights laws." Kang v. U. Lim America, 296 F.3d 810, 816 (9th Cir. 2002), *citing* H. Rep. No. 102-40(I), at 4 (1991), U.S. Code Cong. & Admin. News 549, 549. Courts have recognized the legislative purpose of the Civil Rights Act of 1991 as providing greater remedies for violations of preexisting employment discrimination statutes, including the ADEA. Accordingly, courts have implicitly recognized that the CRA did not create a separate cause of action.

Therefore, as a matter of law, Simonds is entitled to summary judgment on Count IV of the Complaint.

## CONCLUSION

For the foregoing reasons and upon the cited authorities, Defendant Simonds Industries Inc. respectfully submits that this Court should grant its Motion for Summary Judgment on all counts of Plaintiff's Complaint.

SIMONDS INDUSTRIES INC.,

By its Attorneys,

Jonathan R. Sigel, BBO# 559850
Kathryn E. Abare-O'Connell, BBO# 647594
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

Dated:  August 8, 2005