# EXHIBIT F

```
                                            Volume I
                                            Pages:  1-80
                                            Exhibits:  None

        COMMONWEALTH OF MASSACHUSETTS
        COMMISSION AGAINST DISCRIMINATION


LOUIS P. ALBERGHINI,

        Complainant

    vs.                             No. 01SEM10657

SIMONDS INDUSTRIES, INC.,

        Respondent


                *   *   *   *   *   *   *


    DEPOSITION of JEREMY P. DEXTER called as a
witness by the Complainant, pursuant to the
applicable provisions of the Massachusetts Rules
of Civil Procedure, before Susan E. Lepore,
Registered Professional Reporter and Notary
Public in and for the Commonwealth of
Massachusetts, taken at the Elliott Law Office,
307 Central Street, Gardner, Massachusetts, on
Friday, January 3, 2003, commencing at 11:35
a.m.



            ********************

            FLYNN REPORTING ASSOCIATES
            Professional Court Reporters

                One Exchange Place
          Worcester, Massachusetts  01608
            (508)755-1303  *  (617)536-2727
              TOLL FREE: (888)244-8858
                 Fax (508)752-4611

            *********************
```

DUPLICATE

Page 4

[1] First off, you have to answer the
[2] questions verbally, because the court reporter
[3] can't take it down if you shake your head or
[4] nod, or something like that. She needs to have
[5] you answer verbally. If you could wait for me
[6] to ask the question before you give an answer,
[7] it will go much smoother and faster.
[8]     If you don't understand a question
[9] that I've asked you, please ask me to rephrase
[10] it or whatever, so that you understand the
[11] question. If you answer the question, I'm going
[12] to assume that you understood it. Okay?
[13] A: Okay.
[14] Q: Also, if you need to take a break at
[15] any time, just let me know and obviously we will
[16] arrange that for you. I don't expect that this
[17] will take that long.
[18] A: Okay.
[19] Q: Are you represented by an attorney
[20] here today?
[21] A: Yes.
[22] Q: And who is that?
[23] A: Jonathan Sigel.
[24] Q: Okay. And you hired Mr. Sigel to

Page 5

[1] represent you?
[2] A: Can you rephrase that?
[3] MR. SIGEL: Just so it's clear, I'm
[4] representing these folks as part and parcel of
[5] my representation of the company.
[6] Q: Okay. So have you hired an
[7] independent legal counsel for this matter?
[8] A: I don't know.
[9] MR. SIGEL: Do you understand the
[10] question?
[11] THE WITNESS: No.
[12] A: I mean, I'm not the one hiring a
[13] lawyer, this was something that was done.
[14] Q: Okay. My question was whether you
[15] have hired a lawyer.
[16] A: Whether I, personally, have?
[17] Q: Yes.
[18] A: No.
[19] Q: All right. Are you taking any
[20] medication today that would impair your ability
[21] to answer the questions accurately?
[22] A: No.
[23] Q: Could you state your name for the
[24] record, sir, and your residential address?

Page 6

[1] A: Jeremy Paul Dexter, 62 Carriage Way
[2] Drive, Fitchburg, Mass.
[3] Q: Are you planning to move from that
[4] address in the near future?
[5] A: No.
[6] Q: What is your age, sir?
[7] A: 25.
[8] Q: And if you could, please, just tell
[9] me what your current employment is?
[10] A: My current employment is with Simonds
[11] Industries as a manufacturing engineer and
[12] process metallurgist.
[13] Q: Okay. And when were you hired by
[14] Simonds Industries?
[15] A: I was hired in July of 2000.
[16] Q: And prior to July of 2000, did you
[17] perform any work for Simonds Industries?
[18] A: Yes. I was an intern for two
[19] summers, throughout my college career. I also
[20] worked sometimes like during a week, like during
[21] a winter break, as fill-in help.
[22] Q: And what did you do when you filled-
[23] in, in the summers and at winter break?
[24] A: I worked in the metallurgy lab, under

Page 7

[1] Ernie Evancic.
[2] Q: And what sorts of things did you do
[3] during that time?
[4] A: My responsibilities included quality
[5] control, sectioning and mounting of specimens,
[6] etching, also microstructure analysis, and also
[7] some return goods and failure analysis.
[8] Q: And which summers did you work there?
[9] A: That would be the summer of '98 and
[10] the summer of '99.
[11] Q: And what position were you hired for
[12] in July of 2000?
[13] A: My current position.
[14] Q: Which is the manufacturing —
[15] A: Manufacturing engineer and process
[16] metallurgist.
[17] Q: What salary were you hired at for the
[18] manufacturing engineer/process metallurgist?
[19] A: I was making $48,000 a year.
[20] Q: And since July 2000, have you had
[21] increases in salary?
[22] A: Yes.
[23] Q: Okay. When did you have increases,
[24] and what were the — what was the amount?

Page 12

[1] company," are you referring to July of 2000,
[2] when you were hired?
[3] A: Correct.
[4] Q: Okay. What documents did you review
[5] with regard to these projects that you worked
[6] on, that you talked about a moment ago?
[7] A: These were documents that I had put
[8] together for my annual review, just a way of me
[9] going back throughout the year, remembering what
[10] I had worked on.
[11] Q: Okay. And were they the actual
[12] annual review documents or —
[13] A: No.
[14] Q: — are they documents that —
[15] A: No, this is a document I put together
[16] for myself.
[17] Q: All right.
[18] MR. SIGEL: Just to clarify, I think
[19] you — was your question what he used to create
[20] that document he said he reviewed, and you asked
[21] him were they the annual review documents?
[22] MS. ELLIOTT: No, he answered what I
[23] was looking for.
[24] MR. SIGEL: Okay. I misunderstood.

Page 13

[1] Q: Now, what is your education, Mr.
[2] Dexter?
[3] A: I have a BSME, Bachelor of Science in
[4] Mechanical Engineering.
[5] Q: And where did you obtain that?
[6] A: Worcester Polytechnic Institute.
[7] Q: And when did you graduate?
[8] A: In May of 2000.
[9] Q: And what was your experience while
[10] obtaining your mechanical engineering degree at
[11] W.P.I.?
[12] MR. SIGEL: Objection.
[13] Q: Your work experience during that
[14] time.
[15] A: Can you please clarify what portion
[16] of my career or — or, my schooling? When
[17] you're talking about work experience, are you
[18] talking about when I started school, or
[19] throughout school?
[20] Q: Let me clarify the question. During
[21] the time that you were attending school at
[22] W.P.I., what work experience, other than what
[23] you've told us that you did at Simonds
[24] Industries, what other work experience did you

Page 14

[1] have during that period of time?
[2] A: Jobs held outside of Simonds? While
[3] I was at W.P.I., I worked one summer doing
[4] building maintenance for my father's company.
[5] Q: And did you do any other work besides
[6] that, during that time frame, the four years, or
[7] did you —
[8] A: I did —
[9] Q: Let me ask you: Did you take four
[10] years or five years to get your degree or —
[11] A: I took four years to get my degree.
[12] Q: Okay. And during that four-year
[13] period, you've told us that you worked at
[14] Simonds Industries?
[15] A: Yes.
[16] Q: And you told us that you worked for
[17] your father's company?
[18] A: Yes.
[19] Q: Is there any other employment that
[20] you had during that time?
[21] A: No.
[22] Q: Now, your resume lists Heraeus?
[23] A: Heraeus Electro-Nite, yes.
[24] Q: Heraeus Electro-Nite?

Page 15

[1] A: Yes.
[2] Q: Is that a company?
[3] A: Yes.
[4] Q: And did you work for them?
[5] A: It was not a paid position, it was a
[6] project. It was for school credit.
[7] Q: And which project was this, your MQP
[8] or —
[9] A: It was my MQP.
[10] Q: And just for the record, could you
[11] describe what an MQP is?
[12] A: An MQP is the equivalent of a senior
[13] project in engineering, and what it does is it
[14] takes all of your cumulative knowledge in your
[15] field and use it towards one project. In my
[16] case, I was working towards material science.
[17] Q: Could you just describe what you did
[18] for this project, briefly?
[19] A: This is eight months of work you want
[20] me to sum up. This company made thermal
[21] couples, and we were working on a new prototype
[22] thermal couple. What I was doing was through
[23] aluminum casting, determining different —
[24] different tests to find out how well this

# EXHIBIT G

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

ENTER CHARGE NUMBER
☐ FEPA  01231065 7
☐ EEOC

## Massachusetts Commission Against Discrimination
(State or local Agency, if any) — and EEOC

| | |
|---|---|
| NAME (Indicate Mr., Ms., or Mrs.) Louis P. Alberghini | HOME TELEPHONE NO. (Include Area Code) 978-838-7368 |
| STREET ADDRESS 188 Lancaster Road · Berlin, | CITY, STATE AND ZIP CODE MA 01503 | COUNTY Worcester |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| | | |
|---|---|---|
| NAME Simonds Industries, Inc. | NO. OF EMPLOYEES/MEMBERS more than 6 and more than 15 | TELEPHONE NUMBER (Include Area Code) 978-343-3731 |
| STREET ADDRESS Intervale Road, Fitchburg, MA  01420 | CITY, STATE AND ZIP CODE | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))
☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ AGE  ☐ RETALIATION  ☐ OTHER (Specify)

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (Month, day, year)
May 31, 2001

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s)):

(See attached).

**RECEIVED**
NOV 23 2001
Commission Against Discrimination
Springfield Office

JOHN M. FLICK
Notary Public
Commonwealth of Massachusetts
My Commission Expires
September 26, 2008

☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Louis P. Alberghini
Date 11/19/01    Charging Party (Signature)

NOTARY (When necessary to meet State and Local Requirements)
[signature]
I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT
Louis P. Alberghini

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)
11/19/01

EEOC FORM 5 MAR 84    PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

COMMONWEALTH OF MASSACHUSETTS

COMMISSION AGAINST DISCRIMINATION

```
LOUIS P. ALBERGHINI,
         Charging Party,

V.                                                    DOCKET NO.

SIMONDS INDUSTRIES, INC.
         Respondent.
```

**CHARGE OF DISCRIMINATION**

I, Louis P. Alberghini, hereby depose under oath as follows:

1. I was continuously employed by Simonds Industries, Inc. ("Simonds") or its predecessors from 1982 until May 31, 2001 when the company terminated my employment. I had also been laid off for less than 30 days in January of 2000 (allegedly because of a reduction in force), but I was reinstated with all seniority and benefits intact. At the time of my termination on May 31, 2001, my title was Project Engineer. Prior to that title, I had been Manager of Manufacturing Services, Electrical Engineer and Electrical Maintenance Supervisor at other various times during my 19 years of employment with Simonds.

2. I am currently 61 years old. My dated of birth is August 30, 1940.

3. To my knowledge, I performed my job satisfactorily and had received good performance reviews throughout my employment with Simonds. I had never received any disciplinary action during my employment at Simonds.

4. Simonds terminated my employment on May 31, 2001 under the pretext that Simonds was reducing its workforce.

5. I do not believe that Simonds terminated my employment to reduce its' workforce. I believe that Simonds discriminated against me on the basis of my age when it terminated my employment. I base my belief on the fact that Simonds did not eliminate the Project Engineer position and hired a new engineer (Peter Dupree) to replace me and/or to perform the duties previously performed by me within a short time after my termination. The new engineer is much younger than me.

6. I also base my belief on the fact that during the year prior to my termination, I felt that Harold "Chip" Holmes, a Vice President of Simonds, kept me out of the loop, and ignored me, while he gave two younger employees, Richard Brault and Jeremy Dexter, responsibilities

that I was qualified to perform and could have been performed capably by me or at least equally capably by me and these two employees. Simonds also sent Mr. Dexter for further training in "Lean Manufacturing" and did not provide me the same training opportunity.

7. My belief is also based upon Simonds termination of an unproportionate number of older workers over age 50 and age 60 in the past year under the guise of a reduction in the workforce even though the positions and/or the duties of the positions were not eliminated, but were given to younger employees to perform.

8. At the time of my termination on May 30, 2001, Simonds requested that I sign a release to receive 4 months of severance compensation. The release states that severance compensation ceases if I filed a claim for unemployment while receiving the severance compensation. (See Exhibit 1 attached).

9. I did not waive age discrimination claims, known or unknown, to me on May 31, 2001 by executing the release, as the release does not state that I specifically waived such claims under state and federal law. The release also did not comply with any or all of the Equal Employment Opportunity Commission's (EEOC's) regulations to make such waivers valid and enforceable under the Age Discrimination in Employment Act (ADEA). (See Exhibit 1). I also did not receive a listing of the persons terminated by Simonds in this so-called reduction in force indicating the ages, titles and classifications of those affected employees. I also do not believe that I waived any state law age discrimination claims under M.G.L. c. 151B.

10. Moreover, I was not aware that Simonds hired a younger person to replace me until after I had executed the release.

11. For the foregoing reasons, I believe that Simonds has discriminated against me on the basis of my age by terminating my employment under both ADEA and M.G.L. c. 151B, § 4 para. 1B, as amended from time to time. I also believe that Simonds has violated the Older Workers Benefit Protection Act (OWBPA) by failing to comply with those regulations to make a waiver of age discrimination claims valid and enforceable and that the waiver is inapplicable or unenforceable to waive age discrimination claims under M.G.L. c. 151B.

12. As a result of Simonds conduct and actions, I have suffered damages and demand relief for backpay, front pay, lost benefits, emotional distress, attorney's fees, costs and interest, and compensatory and punitive damages, as applicable, including damages under the Civil Rights Act of 1991.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 19 DAY OF NOVEMBER 2001.

_Louis P. Alberghini_
Louis P. Alberghini

2

COMMONWEALTH OF MASSACHUSETTS

Subscribed and sworn to me this 19th day of November, 2001.

_____
Notary Public
My Commission Expires: Sept. 26, 2008

**RECEIVED**

NOV 23 2001

Commission Against
Discrimination
Springfield Office

3

Exhibit A – SCP 1211 –

Date __5/30/01__

## Terms and Conditions of Separation

1. I understand that my employment with Simonds Industries Inc. will be terminated on __May 31, 2001__

2. I understand that I am eligible to receive up to __4 Months__ weeks separation allowance to begin on __June 1, 2001__ (date).

3. I understand, in accordance with Standard Corporate Practice 1211 that should I file for unemployment benefits, my separation allowance will permanently cease as of the date of such filing. For this reason, it is my intention to file for unemployment benefits only upon my receipt of all severance allowance provided for in the Agreement.

4. In consideration of the receipt by me of the separation allowance, I hereby release and forever discharge Simonds Industries Inc. and its corporate affiliates and their officers, directors, agents, and employees from any claim of any sort I may presently have or may have had against all of said companies or individuals arising out of my employment or its termination, except those claims already pending on the date hereof, as specifically noted below. (If "none", so state)

**EXCLUSIONS**

5. I understand that neither Simonds Industries Inc. nor I am bound to the terms of this understanding, unless and until approved by the President as evidenced by the President's signature.

6. I acknowledge that I have been given a copy of SCP-1211 and the opportunity to discuss the contents with counsel and I understand its provisions.

_____     _____
Employee's Signature                         Date

_____
Witness

_____
President


EXHIBIT