UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CENTRAL SECTION

| | |
|---|---|
| LOUIS P. ALBERGHINI,<br>        Plaintiff,<br><br>V.<br><br>SIMONDS INDUSTRIES, INC.,<br>        Defendant. | CIVIL ACTION NO.   04-40092-FDS |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

This case arises out of Plaintiff's ("Plaintiff" or "Mr. Alberghini's") allegations of age discrimination in connection with the Defendant's ("Simonds") termination of his employment. Specifically, Mr. Alberghini alleges that Simonds' reduction in force was not age-neutral and that substantially younger employees replaced him in that his job duties were assigned or transferred to newly hired younger employees with similar or lesser qualifications than Mr. Alberghini. Further, Simonds, in the course of its alleged restructuring, did not consider Mr. Alberghini, who is qualified, for the positions that these same younger employees acquired, in addition to his former duties, because of his age.

Moreover, Simonds' allegations that it underwent an engineering department reorganization and financial crisis beginning in 2000 through 2003 that precipitated such a reduction in force are merely pretexts for age discrimination. The evidence rebuts Simonds' alleged legitimate nondiscriminatory reasons for terminating Mr. Alberghini's employment.

Financial difficulties and reorganization of the engineering department were not the real reasons for his termination because neither a financial crisis nor reorganization of the engineering department arose, if at all, until well after Mr. Alberghini's termination. The evidence shows that Simonds deliberately reduced the burgeoning over 40 workforce of Simonds managerial, technical and administrative staff at the Fitchburg facility and intentionally considered age in selecting Mr. Alberghini and other employees for termination.

## II.   STATEMENT OF FACTS

Mr. Alberghini was employed by Simonds from April 19, 1982 until Simonds terminated his employment on May 31, 2001—a period of approximately 19 years. (Complaint at ¶ 3, Answer and Counterclaims at ¶ 3). On January 7, 2000, Simonds had briefly laid off Mr. Alberghini, for a period of less than 30 days. Id. At that time, Mr. Alberghini had been the Manager of Manufacturing Services for approximately 9 years. (Alberghini Deposition II, at p. 46). Mr. Alberghini was then recalled to work at Simonds as a Project Engineer, a non-management position until his termination on May 31, 2001. (Defendant's Statement of Undisputed Facts at ¶ 8). Mr. Alberghini was 60 years old at the time of his termination. (Complaint at ¶ 6, Defendant's Answer and Counterclaims at ¶ 6). His date of birth is August 30, 1940. (Complaint at ¶ 1).

Mr Alberghini worked at the Simonds manufacturing facility located in Fitchburg, Massachusetts, which also serves as the company headquarters. .

Mr. Alberghini has a Bachelor of Science degree in Electrical Engineering Technology, which he obtained in 1993. (Alberghini Deposition I at pp. 9 – 17). Simonds does not dispute that Mr. Alberghini's performance during his employment was satisfactory. (Complaint at ¶ 8,

Answer and Counterclaims at ¶ 8). There is also no dispute that Mr. Alberghini had never been subjected to disciplinary action for his performance. Id.

Mr. Aberghini had extensive experience with and job knowledge of Simonds product lines and had significant management experience at the company. He had been Manufacturing Services Manager for approximately 9 years prior to his first termination in January 2000. In that position, Mr. Alberghini had both direct management of managers and indirect management of the hourly workforce. . Mr. Alberghini had supervised Don Hagelburg, who was an industrial engineer, all personnel of unit managers in maintenance and Tom Scozik, who was plant engineer. Mr. Alberghini's management experience included union negotiations, handling labor-management disputes, making personnel decisions, preparing employee reviews, preparation of budgets, preparing capital expenditure proposals and other management responsibilities. As an Electrical Engineer for the company, Mr. Alberghini did, in fact, design and develop control systems and a patented design for Circular Saw Testing Technique. His job responsibilities during all years of his employment were concerned with product quality, product development and product design. Mr. Alberghini had supervised Don Hagelburg, who was an industrial engineer, all personnel of unit managers in maintenance and Tom Scozik, who was plant engineer.

Simonds hired Richard Brault (at age 49) on August 14, 2000, Jeremy Dexter (at age 23) on July 17, 2000 and Peter Duperry (at age 23) on July 23, 2001. (Defendant's Statement of Undisputed Facts at ¶¶ 21, 25, and 27, "Exhibit A" at Plaintiff's Appendix 4). Mr. Brault was hired as senior manufacturing engineer and promoted in June 2001 to engineering manager. (Defendant's Statement of Undisputed Facts at ¶ 21). Mr. Dexter was originally hired as an intern and became a Project Engineer along with Mr. Alberghini when Simonds hired him as a

3

full-time employee. (Plaintiff's Appendix 16 at ¶ 10, Simond's Organizational Chart dated February 2000 at Appendix 1). Simonds hired Mr. Duperry about seven (7) weeks after Mr. Alberghini's May 31, 2001 termination with the title of product or manufacturing engineer. (Defendant's Statement of Undisputed Facts at ¶ 25). However, Mr. Duperry was never told the title during his interviews and never saw a job description for this position until just prior to the taking of his deposition in this case. (Duperry Deposition at pp. 45-46, 56, 58).

Mr. Brault assumed one of Mr. Alberghini's projects after his termination and Mr. Duperry and Mr. Dexter assumed other projects or duties that were previously performed by Mr. Alberghini before his termination. (Brault Deposition at pp. 24-25, Duperry Deposition at pp. 42-44, Dexter Deposition at pp. 44-46). Mr. Brault has no engineering degree. (Brault Deposition at p. 14). Mr. Dexter received a mechanical engineering degree in 2000 and Mr. Duperry received his mechanical engineering degree in 2001. (Duperry Deposition at p. 10 and Dexter Deposition at p. 13).

Mr. Brault, Mr. Dexter, and Mr. Duperry had not been provided written job descriptions of their stated positions until Simonds legal counsel prepared them for their depositions in this action. (Duperry Deposition at pp. 45-46, Dexter Deposition at pp. 68-69, and Brault Deposition at pp. 35-37).

On January 7, 2000, Simonds reduced the Fitchburg facility's managerial and administrative workforce by five. (Plaintiff's Appendix 4, p. 1 and Appendix 6, p. 2). All five employees who were terminated were over 40 years old. Id. By 2001, Simonds reduced its managerial and administrative workforce in Fitchburg by 17. (Plaintiff's Appendix 4, p.1). Fourteen of those 17 employees who were terminated were over the age of 40. Id. Mr. Alberghini, who was age 60 at the time, was one of the employees terminated in May 2001. Id.

4

Raymond Martino, CEO of Simonds, was the ultimate decision-maker who directed the termination of Mr. Alberghini along with two other age protected managers in the same level of management in January 2000. John Jordan, who was the Fitchburg Plant Manager at the time, carried out the termination of these individuals. Ronald Owens, Vice-President of Manufacturing was also present when Mr. Martino directed Mr. Jordan to handle the terminations in and about December 1999. Mr. Martino, who was 47 years old at the time, had recently been hired as the company CEO in and about October 1999. Mr. Martino made some early observations of the Simonds company in October 1999 at a company board meeting which included a statement that the promotional practices of the company had "resulted in a conventional wisdom mentality and a lack of diversity in the managerial ranks". At that time, the Fitchburg facility had a non-union workforce that consisted predominately of employees over the age of 40. Thereafter, the terminations of the 14 age protected individuals at the Fitchburg facility including the Plaintiff were commenced from January 2000 to 2001, which included the Plaintiff on both occasions. Ilda Thibodeau was the human resources manager who participated in the 2000 and 2001 terminations. Ms. Thibodeau had been involved in prior reductions in force where age was a deciding factor in the terminations. Mr. Martino and Harold "Chip Holm" who was the Vice-President of Manufacturing improperly considered age in selecting the managerial, technical and professional employees for termination. While Simonds was terminating these employees, Mr. Martino continued to hire executives and Simonds other managerial, technical and professional employees at significantly higher salaries and significantly younger than those who were laid off.

While the company stated financial difficulties as reasons for the terminations, Simonds continued to make acquisitions of other companies up through Mr. Alberghini's termination and

the Fitchburg facility continued to meet the company's financial goals. Mr. Jordan and Mr. Owens received bonuses for performance of the company in 2001.

The Plaintiff's statistical expert reports as follows:

> the data show that within 20 months of the date of Plaintiff Alberghini's first termination, the Fitchburg plant had hired as many new managers and professionals as had been laid off as part of the reduction in force, and these new hires were on average a decade or more younger than those who had been laid off. Statistically, this age difference is "significant," that is, the evidence is extremely strong, strong enough to achieve the threshold used in science as the basis for valid conclusions.

(Appendix 21, Dr. Cobb Report at p. 1).

### III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although some facts may be disputed by the parties, the summary judgment standard requires that there be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, (1986). A material fact creates a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Substantive law governs materiality, and only disputes over facts that might affect the outcome of the trial are material. Id. The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323, (1986). The burden then shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25).

6

Summary judgment should not be granted if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Summary judgment is disfavored in disparate treatment cases because the "issue of discriminatory intent is a factual question." Swallow v. Fetzer Vineyards, 46 Appx. 636 (1st Cir. 2002) quoting Blare v. Husky Injection Molding Sys. Boston, Inc. 419 Mass. 437, 439 (1995); Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 127 (1997).

At the summary judgment stage, a plaintiff must show evidence sufficient "to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action." Thomas v. Eastman Kodak Co., 183 F.3d 38, 57 (1st Cir. 1999). However, a court deciding a motion for summary judgment cannot assume the skepticism of the fact-finder, but must draw all reasonable inferences in favor of the non-moving party. Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 268 (1st Cir. 1994). See also O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). It mainly means that the district judge can accept the moving party's allegedly uncontested facts as true, but whether or not this justifies summary judgment for the moving party depends upon the legal and factual configuration that results. Alsina-Ortiz v. Laboy, 400 F.3d 77, 81 (1st Cir. 2005)

### IV.   ARGUMENT

Under federal and Massachusetts state law, utilizing the three stage order of proof of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), a *prima facie* case of age discrimination in a reduction in force case is established when the Plaintiff shows he is at least 40 years old, he satisfactorily performed his position, he was terminated and the employer retained or replaced him with younger persons or failed to treat age neutrally in implementing the reduction in force. Powers v. H.B. Smith Company, 42 Mass. App. Ct. 657, 661, n. 8 (1997);

Goldman v. First Nat'l Bnak of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993); and Brennan v. GTE Government Systems, Corp. 150 F.3d 21, 26 (1st Cir. 1998). This burden is "not onerous," Currier v. United Techs. Corp., 393 F.3d 246, 254 (1st Cir., 2004). Under Massachusetts law, the fourth element is proved when the Plaintiff produces some evidence that his layoff occurred in circumstances that would raise a reasonable inference of discrimination. Sullivan v. Liberty Mutual Insurance Company, 444 Mass. 34, 45 (2005). The Massachusetts Supreme Judicial Court in Sullivan rejected the narrower showing that the employer retained or replaced the plaintiff. Id. at 42-43.

In the applicable three-stage order of proof, the Defendant's alleged legitimate, nondiscriminatory reasons constitute a pretext for discrimination when the Plaintiff establishes that "the [employer's] facially proper reasons given for its action against him were not the real reasons for that action." Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass. 130, 139 (1976). See also, Blare , 419 Mass. 437 at 440-443. Under Massachusetts' law, the falsity of the employer's explanation permits the jury to infer a discriminatory motive. In Reeves v. Sanderson Plumbing Products., Inc., 530 U.S. 133, 147 (2000), however, the Supreme Court held that, "in appropriate circumstances," the plaintiff's prima facie case together with sufficient evidence of pretext could be enough to support an inference of discrimination. Currie at 255.

In Lipchitz v. Raytheon Co., 434 Mass. 495, 506 (2001), the court found that in cases where the evidence which suggests several reasons for the employer's decision–some of which could be found credible and some of which might not be found credible–the Plaintiff is not required to disprove every reason articulated by the defendant or suggested in the evidence. The Plaintiff meets the burden of proof by persuading the fact finder that it was more likely than not

that at least one reason was false. Id. at 506-507.

> A. Mr. Alberghini has established a reasonable expectiona of proving his *prima facie* case of discrimination including the fourth element of the *prima facie* case, and therefore, summary judgment is not appropriate.

The first three elements of the case are easily proven by the Plaintiff. Mr. Alberghini was 60 years old at the time of his termination. He had performed his job satisfactorily to Simonds expectations and had never received any type of disciplinary action while employed by Simonds. Simonds terminated his employment on May 31, 2001.

The fourth element is proven when a plaintiff proves that the defendant did not conduct an age neutral reduction or that a younger person was retained or replaced the Plaintiff under federal law. Currier at 254. Under state law, the fourth element is proven when the plaintiff produces some evidence that allows a reasonable inference of discrimination. Sullivan at 45. The Plaintiff, here, has evidence that Simonds did not treat age neutral and furthermore, that Simonds did retain a younger person and hired a younger person to do similar duties that the Plaintiff performed before his termination. Prior to the beginning of the reductions in force, Mr. Martino observed that the company's management lacked diversity and that managers had a conventional wisdom mentality. The management team at the Fitchburg facility at the time was predominately older managers, many of whom were near 60 years old or more. Mr. Martino ultimately made the decision or was in the position to influence other managers to terminate those employees, many who had 10, 20 and 30 years of service with the company, including the Plaintiff. In fact, the ages of the managers and their years of service were considered or considered in part in selecting those individuals for termination. (Plaintiff's Appendix 14).

Furthermore, there is evidence that Simonds, while Ilda Thibodeau was in human resources, had before considered age in past reductions in force. Ilda Thibodeau testified that

9

she had created 2 lists with age, birthdate and name, which she characterized as "census information." Not only did she do it in this instance, but Tricia Jearman testified that Ms. Thibodeau had requested information such as this in past reductions in force. Finally, Mr. Owens testified at one point that the elimination of the positions in which Mr. Larsen and other age-protected employees were terminated occurred prior to the reduction in force.

Second, Simonds contention that Mr. Alberghini did not have the requisite skills to perform the product/manufacturing engineering position is a complete sham created by Simonds. The product/manufacturing engineer position that was created in May 2001 does not require mechanical engineer degree. (Plaintiff's Appendix 22). Both Mr. Dexter and Mr. Alberghini performed similar assignments as Project Engineers. Yet, Simonds retained Mr. Dexter, who was only 23 years old, after May 31, 2001 to perform what Simonds termed the product/manufacturing engineer position. The duties of project engineer were not eliminated. Those duties were subsumed in the new position. A job is not eliminated unless the job duties are no longer performed by anyone. Sullivan at 44. The relevant change in the job according to Simonds was the focus on a product line versus all the product lines. However, as Mr. Jordan testified at his deposition

> the argument that a project engineer couldn't do project engineering is a very specious argument . . . I'm convinced that a job description was constructed in May 2001, as a product engineer. . .for some reason that I can't really fathom . . . that reads the same as an existing job description. . . followed shortly thereafter by a layoff. Lou [was] a project engineer doing projects throughout the whole plant, but he couldn't do part of the plant. . . . . I find that illogical.

(Jordan Deposition II at p. 110-111).

After Mr. Alberghini's termination, Simonds hired Mr. Duperry, also age 23 at that time, for the product/manufacturing engineering position. Mr. Duperry also performed similar duties that the Plaintiff had performed as a Project Engineer. Evidence that an employee was replaced

10

shortly after discharge undermines the employer's explanation that the discharge was due to a downsizing or reduction-in-force. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir.), cert. denied, 536 U.S. 1261 (2000). Evidence that the employer hired younger employees for positions and functions similar to those of an older employee who was laid off undercuts the employer's proffered reason that the older employee's position or functions were not operationally necessary. See Brennan v. GTE Government Systems Corp., 150 F.3d 21, 30 (1st Cir. 1998).

Both Mr. Duperry and Mr. Dexter had recently graduated from engineering school with mechanical engineering degrees and had no work experience in comparison to Mr. Alberghini. Mr. Dexter and Mr. Duperry had to be trained in Lean Manufacturing and Simonds chose to train them rather than provide additional Lean Manufacturing training for Mr. Alberghini who was 60 years old. Mr. Brault, who was 49 at the time, also retained his engineering position and, in fact, shortly after Mr. Alberghini's termination was promoted to engineering manager although he had no engineering degree at all.

Moreover, the evidence proffered by the Plaintiff of the new hires that were between a decade and 17 years younger than those that had been laid off is consistent with the Plaintiff's theory of discrimination. (Plaintiff's Appendix 21, Dr. Cobb report).

For all of these reasons, Plaintiff has an expectation of proving his case at trial and summary judgment is not appropriate.

B. Simonds' allegations that it underwent an engineering department reorganization and financial crisis in 2001 that precipitated a reduction in force are merely pretexts for age discrimination.

In endeavoring to prove a plaintiff's third-stage McDonnell Douglas burden, "many veins of circumstantial evidence may be mined. These include -- but are no means limited to --

11

evidence of differential treatment, evidence of discriminatory comments, statistical evidence, and comparative evidence." Pierce v. Sears, Roebuck & Co., 2005 U.S. Dist. LEXIS 1360 (D. Me. 2005). The totality of the cognizable evidence, viewed in the light most favorable to the Plaintiff would permit a reasonable fact-finder to conclude that Simonds reasons were pretextual and that age was a motivating factor in the decision. Simonds alleges that Mr. Alberghini was terminated because it restructured the engineering department. Simonds alleges that the reorganization of the engineering department occurred in conjunction with Mr. Alberghini's termination and, in fact, precipitated his termination as it is alleged he was not qualified to perform such work post-reorganization. However, the reorganization of the engineering department, according to Mr. Brault's testimony, occurred after Mr. Alberghini had been terminated and was not simultaneous with his termination or as a result of such reorganization. (Brault Deposition at p. 51). Mr. Brault testified that he became the engineering manager at the end of June 2001. (Brault Deposition at pp.23-24). Mr. Brault testified further that

> Well, after I took over the engineering department, the engineering responsibilities were realigned and the engineers were basically given responsibility for specific product lines. Prior to that, they were just given jobs or projects that could have been anywhere in the plant. So the department was basically divided up, and engineers were given specific areas of responsibility, and that's primarily one of the biggest changes that we made.
>
> The other, probably big thing that happened is that because they had responsibility for the whole line, they did whatever was required or needed within that line. There was no distinction, you know, I'm a project manager, I'm a product manager—or whatever kind of a manager, and work divided up along those lines. It was: You're responsible for the line, and you're responsible for completing whatever needed to be done.

(Brault Deposition at pp. 41-42).

Furthermore, Simonds claims in its Position Statement that its post-restructuring "lean engineering department has been refocused on product development and quality, metallurgy and

machine design. Yet, the only real difference involved the engineers being assigned to a product line and there was no change in the actual duties or functions performed by the engineers. As Project Engineer, Mr. Alberghini was responsible for engineering projects related to the manufacturing process and updating product prints as well as all duties outlined in the project engineer job description. (Plaintiff's Appendix 22, Job Descriptions, Alberghini Deposition at pp. 61-62). The project engineer job description includes such duties as developing new methods, processes or equipment and maintaining intimate knowledge of the manufacturing processes and other duties of product development, quality and machine design. Thus, there is no theoretical or real difference in the types of work performed before or after the restructuring of the engineering department, albeit work may have been assigned to a specific product line.

Simonds alleges a second reason motivated the reduction in force in 2001, which was a manufacturing recession that caused economic concerns for the company. There is conflicting evidence regarding the economic condition of the company. John Jordan, the former Fitchburg plant manager states that the company was financially sound at Fitchburg and that it was not until after September 2001 that financial issues arose concerning the repayment of a bond. (Appendix 11, Jordan Affidavit). According to Mr. Jordan, as of April 2001, Simonds continued to acquire new companies. (Appendix 11, Jordan Affidavit). However, Mr. Martino then hired three new Vice Presidents of the company and a Chief Financial Officer shortly after he required Mr. Alberghini and many other managers who were over 40 years old, to be terminated. Harold Holm, Jr. (age 46) was hired on February 1, 2000 as Vice President of Manufacturing at a salary of $165,000.00, Henry Botticello (age 46) was hired on April 1, 2000 as Chief Financial Officer at a salary of $192,000.00, Susan Caselli (age 46) was hired on May 1, 2000 as Vice President Information Tech and CIO at a salary of $138,000.00 and Paul Benoit (age 51) was hired as Vice

President of Supply Chain Management at a salary of $135,000.00. (Plaintiff's Appendix 4 at p. 3. Clearly, if economic concerns were looming, Simonds would not have hired additional executive employees at significant salaries or continued to acquire new companies.

    C.    <u>Plaintiff concedes that Count III of his complaint should be dismissed.</u>

    D.    <u>In this jurisdiction the Civil Rights Act of 1991 must be plead as a separate count of the complaint and in the event that it is not a separate count the Plaintiff is still entitled to damages under the Act</u>.

In <u>Pomales v. Celulares Telefonica, Inc.</u>, 342 F.3d 44, 46 (1st Cir. 2003), the First Circuit upheld the Civil Rights Act of 1991 as an independent cause of action implicitly approving and interpreting the inclusion of the Act as a separate count in the complaint. Even if the Act is not plead as a separate count, the Plaintiff would be entitled to damages under the Act if he proves intentional age discrimination.

## V.    CONCLUSION

For the foregoing reasons, Defendant is not entitled to summary judgment on Counts I, II and IV of his complaint. The Plaintiff agrees to the dismissal of Count III of his complaint.

                                              LOUIS ALBERGHINI,
                                              THE PLAINTIFF
                                              BY HIS ATTORNEYS,

                                              */s/ Marcia L. Elliott*
                                              Marcia L. Elliott, Esq. (BBO# 564291)
                                              John M. Flick, Esq. (BBO# 652169)
                                              Elliott Law Office, P.C.
                                              307 Central Street
                                              Gardner, MA 01440
                                              (978) 632-7948

Dated: September 15, 2005

## CERTIFICATE OF SERVICE

    I, Marcia L. Elliott, Esquire, hereby certify that I have this day served a true copy of the foregoing by mailing said copy, first class, postage prepaid to Defendant's attorney, Jonathan Sigel at Bowditch & Dewey, LLP, 311 Main Street, Worcester, MA 01615.

                                              Marcia L. Elliott, Esquire