UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| LOUIS P. ALBERGHINI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SIMONDS INDUSTRIES INC., ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. 04-40092-FDS <br><br> Jonathan R. Sigel, BBO# 559850 <br> Kathryn E. Abare-O'Connell, BBO# 647594 |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

In his Opposition to Defendant's Motion for Summary Judgment ("Opposition"), Plaintiff failed to raise any genuine issue of material fact. Furthermore, Plaintiff's Opposition is replete with untenable factual and legal arguments and inaccurate and misleading citations to the record.

ARGUMENT

I. PLAINTIFF HAS NOT RAISED A GENUINE ISSUE OF MATERIAL FACT WITH REGARD TO HIS CLAIM OF AGE DISCRIMINATION.

A. <u>Plaintiff Mischaracterizes The Evidence Regarding Simonds' Consideration Of Age.</u>

With complete disregard for the federal and local rules and absolutely no citation to the record, Plaintiff baldly alleges that Simonds Industries Inc. ("Simonds" or "the Company") and its management had a history of considering age in conducting its reductions-in-force ("RIF"),

including the January 2000[1] and May 2001 reductions. (Plaintiff's Memorandum at 4.) The undisputed evidence demonstrates that Simonds did not consider age when conducting the May 2001 RIF, or any other RIF.

### 1. Plaintiff Mischaracterizes Raymond Martino's Statement Concerning Diversity.

In his Opposition, Plaintiff alleges that, in October 1999, at a Company board meeting, Raymond Martino, Simonds' President, commented "that the promotional practices of the company had 'resulted in a conventional wisdom mentality and a lack of diversity in the managerial ranks.'" (Plaintiff's Statement at 2, ¶ 4; Plaintiff's Memorandum at 5.) Plaintiff suggests that, by making that comment, Mr. Martino meant that Simonds did not have enough young employees. That allegation is both utterly false and without substantiation. Plaintiff provided _no citation to the record_ regarding Mr. Martino's comment and/or his testimony regarding this statement. In fact, in his Concise Statement, Plaintiff _inaccurately_ cited to Page 2-169 of a trial transcript from another matter, and then failed to even attach the correct portion of the transcript. Instead, Plaintiff attached an incomplete portion of Mr. Martino's trial testimony.

In any event, an examination of Mr. Martino's uncontroverted testimony in the other case demonstrates that there is no genuine issue of material fact regarding his "lack of diversity" comment. Mr. Martino testified as follows:

> Question: Mr. Martino, do you remember making some early observations of the Simonds Industries company in [sic] October 29, 1999, shortly after you became the chief operating officer?
> Answer: Yes.
> Question: In that – in your early observations, you observed that one of the negatives of the company was that it promoted people from within and it had resulted in

---

[1] To the extent that Plaintiff is attempting to state a claim regarding his brief layoff in January 2000, such a claim is time-barred.

| | |
|---|---|
| | some conventional wisdom mentality and lack of diversity in the management ranks? |
| Answer: | That's correct. |
| Question: | You are aware that the Fitchburg facility was predominately an age-protected work force at that time? |
| Answer: | I was not. |
| Question: | You were aware, after January 7, 2000, that the Fitchburg facility was predominately an age-protected work force? |
| Answer: | No, I was not. |

(Transcript of Trial in the matter of *Ronald Larsen v. Simonds Industries Inc.*, No. 01-40059 ("Larsen Trial Transcript") at 2-167 – 2-168, portions of which are attached hereto as <u>Exhibit 1</u>.)

There is no evidence whatsoever that Mr. Martino's comment regarding diversity in the workforce had any relationship to the *age* of its employees or to any discriminatory animus toward older employees. To the contrary, the undisputed evidence demonstrates that Mr. Martino was not even aware of the age composition of Simonds' workforce at the time he commented on the lack of diversity amongst the management. (Larsen Trial Transcript 2-167 – 2-168.) Accordingly, despite Plaintiff's contention, Mr. Martino's comment regarding diversity of Simonds' management in October 1999 does not raise any genuine issue of material fact.

Furthermore, even if there were any evidence that Mr. Martino's comment regarding diversity in October 1999 had any relationship to age, the comment is not admissible in the instant case as evidence that the Company discriminated against Plaintiff on the basis of his age. Plaintiff was selected for layoff in May 2001– more than one and one-half years later. It is well-settled that if a stray comment "…[was] temporally remote from the date of the employment decision, or … [was] not related to the employment decision in question," then the statement is not probative and should be excluded. See <u>Straughn v. Delta Air Lines, Inc.</u>, 250 F.3d 23, 36 (1st Cir. 2001), quoting <u>McMillan v. Mass. Soc. Prev. of Cruelty to Animals</u>, 140 F.3d 288, 301 (1st Cir. 1998); <u>Lehman v. Prudential Ins. Co. of America</u>, 74 F.3d 323, 329 (1st Cir. 1996)

3

("[I]solated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent.").

### 2. The Undisputed Evidence Demonstrates That Mr. Martino and Mr. Owens Approved The February 2000 Rehiring Of Plaintiff At Age 59.

Plaintiff cannot raise a genuine issue of material fact regarding any alleged discriminatory animus on the part of Mr. Martino toward Plaintiff. Mr. Martino (and Simonds' Vice-President of Manufacturing, Ronald Owens) expressly authorized Simonds' rehiring of Plaintiff for a professional position (Project Engineer) approximately four weeks after his initial layoff in 2000. Plaintiff was approximately 59 years old at the time he was rehired. (Larsen Trial Transcript at 2-167; Second Affidavit of Ilda Thibodeau ("Second Thibodeau Aff."), attached hereto as Exhibit 2, at ¶¶ 4 – 5.) Indeed, it is undisputed that the Company rehired Plaintiff in February 2000, without any loss of pay or benefits, and the Company retained Plaintiff for eighteen (18) months. (Affidavit of Ilda Thibodeau ("Thibodeau Aff."), attached hereto as Exhibit 3, at ¶ 7.) Mr. Martino's and Mr. Owens' decision to approve Plaintiff's rehire in such circumstances is strong evidence that Mr. Martino, Mr. Owens and the Company did not harbor any discriminatory animus against Plaintiff on the basis of his age or any other basis.

Plaintiff repeatedly refers to the January 2000 RIF as evidence that the Company discriminated on the basis of age. Plaintiff, however, conveniently neglected to mention that three of the five employees at Simonds' Fitchburg facility who were laid off as a result of the Company's January 2000 RIF were soon rehired by Simonds. Those individuals are Plaintiff (date of birth 8/30/40), James Bourque (date of birth 9/23/51), and Victoria Lanides (date of birth 7/21/43). Notably, Mr. Bourque's and Ms. Lanides' employment at Simonds continued for several years after their rehiring. (Second Thibodeau Aff. at ¶ 4.) Accordingly, the Company's decision to rehire Plaintiff, Mr. Bourque and Ms. Lanides (who were ages 59, 48 and 56,

4

respectively, at the time of their rehiring) is further evidence that the Company did not discriminate on the basis of age.

### 3. *Plaintiff Mischaracterizes Simonds' Use Of Employee Age Data During The Reduction-In-Force Process.*

Plaintiff also alleges that

> there is evidence that Simonds, while Ilda Thibodeau was in human resources, had before considered age in past reductions in force. Ilda Thibodeau testified that she had created 2 lists with age, birthdate and name, which she characterized as 'census information.' Not only did she do it in this instance, but Tricia Jearman testified that Ms. Thibodeau had requested information such as this in past reductions in force.

(Plaintiff's Memorandum at 9 – 10.) However, in his Memorandum, Plaintiff does not provide a single citation to (and grossly mischaracterizes) the record in support of these disingenuous assertions.[2]

The uncontroverted testimony demonstrates that Simonds did not consider age in selecting individuals for the May 2001 RIF or any other RIF. Conversely, the undisputed evidence demonstrates that Simonds only considered its employees' age and other data concerning protected status to ensure that its RIF would not have a disparate impact on any protected group, including employees age 40 and over. (Larsen Trial Transcript 2-144 – 2-145, 2-168 – 2-169, 3-16.) Indeed, as the <u>Larsen</u> trial testimony from Ms. Thibodeau and Mr. Martino demonstrates, Simonds only considered the ages (and other data concerning protected classifications) <u>after</u> individuals had already been selected for layoff. This was done as a double-check to ensure that the layoff did not have any unintended disproportionate effect on any protected group. (Larsen Trial Transcript 2-144 – 2-145, 2-168 – 2-169, 3-16.) Therefore, it

---

[2] In Plaintiff's Statement, he does cite Ms. Jearman's testimony in support of his allegation that Simonds considered the age of employees in conducting past reductions-in-force. However, a thorough examination of Ms. Jearman's testimony does not support Plaintiff's allegations. See *Part IA(4)* below.

is undisputed that Simonds did not consider the age of employees in selecting those employees whose jobs would be eliminated as part of the RIF. (Larsen Trial Transcript 2-144 – 2-145, 2-168 – 2-169, 3-16.)

> 4. *This Court Should Not Consider Patricia Jearman's Testimony And Affidavit Because It Is Inadmissible Hearsay Evidence That Does Not Comply With Rule 56 of the Federal Rules Of Civil Procedure.*

In his Concise Statement, Plaintiff cites the testimony and Affidavit of Patricia Jearman, a former Simonds Payroll/Benefits Clerk employed by Simonds, in support of his contention that Simonds did not treat age neutrally. However, Jearman's testimony and affidavit do not "set forth such facts as would be admissible in evidence" as required by Rule 56 of the Federal Rules of Civil Procedure. See FED. R. CIV. P. 56(e). Jearman's testimony and affidavit are not based on *any* personal knowledge regarding Simonds' 2000 or 2001 reductions-in-force. As Jearman admits in her affidavit, she has not been employed at Simonds since January 1996 –four years prior to Plaintiff's layoff in May 2001. (Affidavit of Patricia Jearman at ¶ 5.) Thus, Jearman obviously has no personal knowledge whatsoever of any decision-making practices or rationales regarding Simonds' ongoing reorganization and RIF which began in January 2000 or, specifically, regarding Plaintiff's layoff.

Indeed, at her deposition, Ms. Jearman testified as follows:

> Question: Do you have any personal knowledge of any Simonds policy or practice after January 27th, 1996?
> Answer: No, I do not.
> \*\*\*
> Question: Same question with respect to any reductions in force since you left the company.
> Answer: I know nothing about them besides, you know, like I said, Lou telling me that he was laid off – I have to take that back. I have heard that there had been some other staff leaving the company, too and I don't know the extent of their leaving the company.
> . . . .

(Deposition of Patricia Jearman taken on March 14, 2005 ("Jearman Dep."), attached hereto as Exhibit 4, at 66 – 68.) Furthermore, Simonds' management at the time of the May 2001 RIF – Mr. Martino and Mr. Owens – were not even employed by the Company during Jearman's employment at Simonds. (Second Thibodeau Aff. at ¶ 6.) Therefore, Jearman's testimony and affidavit are wholly irrelevant and should be given absolutely no weight or consideration by this Court.

Notably, relatively recently, the U.S. Court of Appeals for the First Circuit addressed a similar issue in upholding a summary judgment in favor of an employer. See Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 32 (2003). In doing so, the First Circuit stated:

> [I]nadmissible hearsay from other employees that, in their view, [a supervisor] terminated older employees to give work to younger employees, and that he preferred to hire younger employees … was not admissible and could not be considered in the summary judgment analysis.

Id. Likewise, this Court should not consider Jearman's testimony or affidavit, which consists of inadmissible hearsay evidence.

Furthermore, were this Court to consider the testimony or affidavit of Ms. Jearman, it does not raise a genuine issue of material fact regarding whether Simonds improperly considered age when conducting its RIF. Ms. Jearman testified that, in her current human resources position at another company, she and that company performed the same kind of disparate impact analysis that Simonds performed regarding the May 2001 RIF. Ms. Jearman further testified that such a disparate impact analysis is not only appropriate for a company to conduct, but that the company had a "responsibility to do that." (Jearman Dep. at 46 – 52, 84 – 87.)

Accordingly, Plaintiff has failed to establish a genuine issue of material fact regarding Simonds' consideration of age during the RIF.

### B. Plaintiff Has Failed To Demonstrate A Genuine Issue Of Material Fact Regarding Simonds' Decision To Rehire Him Into A Non-Management Position.

Throughout his Opposition, Plaintiff emphasizes that, after his January 2000 layoff, Simonds rehired him into a "non-management" position at the Company, presumably arguing that that is evidence of age discrimination. However, the fact that Plaintiff was rehired into a non-management position is wholly irrelevant to his claim.

First, Plaintiff has never before claimed that Simonds' decision to rehire him into a non-management position in February 2000 constituted discrimination.[3] Indeed, in his Complaint and throughout this litigation, Plaintiff's predominant claim has been that Simonds should have retained him in May 2001 as a product/manufacturing engineer. (Complaint at ¶ 13.) Accordingly, Plaintiff's attempt to now argue that the Company's decision to rehire him for a non-management position is disingenuous at best, in addition to being time-barred.

Second, it is undisputed that Plaintiff was rehired into a position with the same rate of pay and benefits that he had immediately prior to his January 2000 layoff. (Thibodeau Aff. at ¶ 7.) Indeed, at his deposition, Plaintiff testified that "I liked the job I was doing [when rehired]. Project engineer was very interesting and it piqued me." (Deposition of Louis Alberghini taken on October 23, 2002 ("Alberghini Dep. I"), attached hereto as Exhibit 5, at 69.) As a result, Plaintiff has failed to raise any genuine issue of material fact regarding the Company's decision to rehire him for the Project Engineer position after his layoff in 2000.

Accordingly, despite Plaintiff's attempts to mischaracterize his rehiring at the "eleventh hour," the fact that Simonds rehired Plaintiff at age 59, at the same salary and benefits, and

---

[3] To the extent that Plaintiff is stating a claim regarding the Company's decision to rehire him into a non-management position in 2000, such a claim is time-barred.

maintained his employment for eighteen months is strong evidence that the Company did not discriminate against him.

### C. Plaintiff Has Failed To Raise A Genuine Issue Of Material Fact Regarding Simonds' Financial Situation Prior To The May 2001 Reduction-In-Force.

In his Opposition, Plaintiff misrepresents the evidence regarding Simonds' financial situation in or around May 2001. In support of his position, Plaintiff relies on an affidavit (dated June 21, 2002) from a former Simonds Plant Manager, John Jordan, in which Mr. Jordan said "[i]n 1999 and 2000 and even up to mid-2001, the company was doing fine financially ... ." (Plaintiff's Memorandum at 13.) However, at his deposition, Mr. Jordan acknowledged that, after January 2001, he no longer had access to company-wide financial information. (Deposition of John Jordan taken on March 14, 2005 ("Jordan Dep. II"), attached hereto as Exhibit 6, at 18 – 19.) Moreover, at his deposition, Mr. Jordan testified that the Company was experiencing declining sales, recessionary pressure on the metal band industry, and increased costs. (Jordan Dep. II at 28 – 29.) In that regard, Mr. Jordan elaborated as follows:

> Question: And how long had there been declining sales – and by that you were referring to the Fitchburg facility?
> Answer: Yes.
> Question: To your knowledge, how long had there been declining sales at the company at that time?
> Answer: I can't recall. I know there were some, you know, recessionary pressure on the metal band industry, you know, throughout '99. And again, you know, we were – it was, you know, the 1990—2000 pro forma budget, given the sales level and the increased cost was unacceptable. And we were told – myself and John [Kifer] and others were told that we needed to try to get – somehow get about a million dollars out of the Fitchburg budget for 2000.
> Question: What were the rising costs?
> Answer: Negotiated wage increases for the hourly, probably steel, certainly energy. I would say that would be the three.

(Jordan Dep. II at 28-29.) Mr. Jordan further testified as follows:

9

04-40092-FDS