# EXHIBIT 3

EXHIBIT 3

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

| | |
|---|---|
| LOUIS P. ALBERGHINI, ) | CIVIL ACTION NO. 04-40092-FDS |
| Plaintiff, ) | |
| v. ) | Jonathan R. Sigel BBO# 559850 |
|  ) | Kathryn E. Abare-O'Connell BBO# 647594 |
| SIMONDS INDUSTRIES INC., ) | |
| Defendant. ) | |

### AFFIDAVIT OF ILDA M. THIBODEAU

I, Ilda M. Thibodeau, do hereby depose and state as follows:

1. My name is Ilda M. Thibodeau. All statements contained in this affidavit are made of my own personal knowledge or have been verified by reviewing the relevant business and personnel records of Defendant Simonds Industries Inc. ("Simonds" or "the Company"). As to those facts stated on information and belief, I believe them to be true.

2. I am the Director of Human Resources for Simonds, and I have held that position since September 2001. I have been employed with Simonds or its predecessors since May 1983, and I have worked in the Human Resources Department during that entire time. As part of my duties and responsibilities as Director of Human Resources, I am the custodian of the personnel records of all current and former employees of the Company, including Plaintiff Louis Alberghini.

3. Simonds and its predecessors have been manufacturing cutting tools since 1832. The Company manufactures a wide assortment of tools that cut metal, wood, paper and plastics.

Simonds' headquarters is in Fitchburg, Massachusetts and it maintains six other manufacturing sites in the United States as well as others outside of this country.

4. Beginning in the last quarter of 1999, Simonds' company-wide management concluded that the Company employed many more people than was the published standard for manufacturing companies of comparable size. Simonds then began analyzing all sectors of the Company, including manufacturing, in an effort to make operations more efficient, increase productivity and reduce costs. The conclusion of the analysis was that many positions needed to be eliminated worldwide, which would result in an annualized cost savings for Simonds of more than $1.5 million without decreasing productivity and with an increase in efficiency.

5. In addition, from 1999 through 2001 Simonds suffered decreasing sales and rising costs. As a result of the decreasing sales and rising costs, Simonds defaulted on its $5 million semi-annual interest payment for its $100 million public bond issue. The Company had to cut costs significantly in order to compensate for lost sales and in order to survive.

6. Accordingly, in January 2000, Simonds began implementing a company-wide reorganization and reduction-in-force ("RIF"). Simonds' reorganization and RIF resulted in the Company stripping down all operating departments, including engineering, to the lowest levels possible while still retaining the most essential functions. As part of this restructuring, the entire salaried manufacturing sector, including the engineering department, was reorganized, and redundant positions were eliminated. The reorganization and RIF continued into the year 2003 and resulted in the elimination of approximately 300 jobs throughout all of Simonds' facilities, both domestically and internationally. Manufacturing facilities in California and the United Kingdom have been closed as a result of this company-wide reorganization.

7. Plaintiff was employed by Simonds from 1983 until January 2000, when he was laid off as part of the above-described reorganization and RIF. However, in February 2000, Simonds re-hired Plaintiff for the position of Project Engineer in the Company's Fitchburg facility. At the time Plaintiff was re-hired (and for the duration of his employment), Simonds compensated Plaintiff at the same rate of pay (and level of benefits) which he had been receiving immediately prior to his

January 2000 layoff. Plaintiff held the position of Project Engineer for the remainder of his employment.

8.  In May 2001, as part of the ongoing RIF and reorganization to implement the Simonds Operating System and "Lean Manufacturing" techniques, the Company determined that the function of the Project Engineer position, namely specifically assigned projects relating to the manufacturing process and plant maintenance, could be absorbed by the manufacturing sector as a whole, and that it was necessary to focus more on product-related engineering (such as metallurgy, product development and quality and machine design). Accordingly, on May 31, 2001, the Project Engineer position at the Fitchburg facility was eliminated and Plaintiff was laid off.

9.  At the time of his layoff, Plaintiff was the only individual in the Project Engineer position at the Fitchburg facility.

10. Since his layoff, Simonds has neither reinstated the Project Engineer position nor hired anyone to replace Plaintiff.

11. The kinds of duties formerly performed by Plaintiff are no longer performed as specific and integrated engineering projects but, rather, are performed generally by the manufacturing sector.

12. I am informed and believe that none of the particular duties which Plaintiff performed as a Project Engineer required mechanical engineering expertise.

13. At the time of his layoff on May 31, 2001, Plaintiff was presented with, among other things, a release of claims (i.e., "waiver") form that he was required to sign if he chose to receive four months of severance pay and benefits from Simonds. This waiver form is standard operating procedure for Simonds when providing severance benefits to terminated employees. (A true and complete copy of that waiver form is attached hereto as Exhibit 1.)

14. Because Plaintiff signed the waiver document, Simonds paid Plaintiff four months of compensation and continued his employee benefits for that same period of time.

15. In June 2001, approximately one month following Plaintiff's layoff, the former head of the engineering department, Raymond Edson (age 58 at the time; d.o.b. 2/26/43), Director of Manufacturing Engineering, retired from Simonds so that he could engage in the real estate business.

16. Additionally, at about the same time, the Engineering Manager, Steve Niemi (age 31 at the time; d.o.b. 7/29/69), resigned.

17. As a result, in June 2001, Richard Brault (age 48 at the time; d.o.b. 9/2/52), who had been employed by Simonds as a Senior Product Engineer since August 2000, was promoted to the position of Engineering Manager to replace Steve Niemi (age 31 at the time; d.o.b. 7/29/69). Mr. Brault holds a Bachelor of Arts degree in Manufacturing Management and had substantial prior supervisory and management experience prior to coming to Simonds. (A true and complete copy of Mr. Brault's resume is attached hereto as Exhibit 2.)

18. After the layoffs and the Edson and Niemi resignations, the engineering department quickly found itself with inadequate staffing.

19. Simonds assessed the specific needs of a very lean and redirected engineering department, and the Company decided that its primary needs related to product/manufacturing engineering (e.g., metallurgy, product development and quality, and machine design) rather than general project-based engineering.

20. Accordingly, during the summer of 2001, Simonds hired two Product Engineers (a/k/a Manufacturing Engineers) - i.e., Peter Duperry (age 23 at the time; d/o/b 2/23/78) and Salvatore Santoro (approximately age 55 at the time; d/o/b 8/29/46).

21. Not long after Simonds hired Salvatore Santoro in the summer of 2001, he became the Quality Manager in Simonds' Fitchburg facility, which position he still holds. (The Company's previous Quality Manager, William Baker, was 49 years old at the time he was laid off in May 2001.) As Quality Manager, Mr. Santoro's primary duties involve overseeing and improving all of the facility's quality control functions, and he is responsible for ensuring that the Company remains compliant with "ISO 9000" (i.e., international standardization) requirements.

22. Jeremy Dexter (age 25 at the time; d.o.b. 9/23/77), had been an intern at Simonds for several months in 1998 and 1999. Mr. Dexter became a regular, full-time employee almost one year prior to Plaintiff's May 2001 layoff, and he is a Manufacturing Engineer/Process Metallurgist.

23. Messrs. Duperry, Santoro and Dexter all have Bachelor of Science degrees in Mechanical Engineering. (A true and complete copy of the resume of Peter Duperry is attached hereto as Exhibit 3; a true and complete copy of the resume of Salvatore Santoro is attached hereto as Exhibit 4; a true and complete copy of the resume of Jeremy Dexter is attached hereto as Exhibit 5.)

24. Peter Duperry is no longer employed by the Company. Mr. Duperry resigned from Simonds on January 23, 2004.

25. Since Mr. Duperry's resignation, on August 9, 2004 and November 8, 2004, respectively, the Company hired Anthony Maietta (age 22 at the time; d.o.b. 3/28/82) and Joseph Markowicz (age 50 at the time; d.o.b. 6/15/54) as Process Engineers. The position of "Process Engineer" was formerly known as "Product Engineer."

26. As of December 2002, 70 of the 81 non-union employees at Simonds' Fitchburg facility were age 40 and over; 25 employees were in their 40's; 34 employees were in their 50's; and 11 employees were in their 60's. As of that date, only 8 employees were in their 30's and

only 3 employees were in their 20's. (A true and complete listing of the non-union employees at Simonds' Fitchburg facility as of December 2002 is attached hereto as Exhibit 6.)

Signed under the pains and penalties of perjury this 8th day of August, 2005.

*Ilda Thibodeau*
Ilda M. Thibodeau

1

{}

Exhibit A – SCP 1211

Date __5/30/01__

## Terms and Conditions of Separation
_Lou Alberghini_

1. I understand that my employment with Simonds Industries Inc. will be terminated on __May 31, 2001__

2. I understand that I am eligible to receive up to __4 Months__ ~~weeks~~ separation allowance to begin on __June 1, 2001__ (date).

3. I understand, in accordance with Standard Corporate Practice 1211 that should I file for unemployment benefits, my separation allowance will permanently cease as of the date of such filing. For this reason, it is my intention to file for unemployment benefits only upon my receipt of all severance allowance provided for in the Agreement.

4. In consideration of the receipt by me of the separation allowance, I hereby release and forever discharge Simonds Industries Inc. and its corporate affiliates and their officers, directors, agents, and employees from any claim of any sort I may presently have or may have had against all of said companies or individuals arising out of my employment or its termination, except those claims already pending on the date hereof, as specifically noted below. (If "none", so state)

**EXCLUSIONS**

5. I understand that neither Simonds Industries Inc. nor I am bound to the terms of this understanding, unless and until approved by the President as evidenced by the President's signature.

6. I acknowledge that I have been given a copy of SCP-1211 and the opportunity to discuss the contents with counsel and I understand its provisions.

_Louis Alberghini_ _____ 6/4/01
**Employee's Signature**                        Date

_[signature]_ _____
**Witness**

_[signature]_ _____ 6/4/01
**President**