# EXHIBIT 7

Page 1

[1]         Volume I
            Pages: 1-54
[2]         Exhibits: None
[3]   COMMONWEALTH OF MASSACHUSETTS
      COMMISSION AGAINST DISCRIMINATION
[4]
[5] LOUIS P. ALBERGHINI,
[6]       Complainant
[7] vs.         No. 01SEM10657
[8] SIMONDS INDUSTRIES, INC.,
[9]       Respondent
[10]
[11]
[12]  DEPOSITION of RICHARD BRAULT called as a
      witness by the Complainant, pursuant to the
[13]  applicable provisions of the Massachusetts Rules
      of Civil Procedure, before Susan E. Lepore,
[14]  Registered Professional Reporter and Notary
      Public in and for the Commonwealth of
[15]  Massachusetts, taken at the Elliott Law Office,
      307 Central Street, Gardner, Massachusetts, on
[16]  Friday, January 3, 2003, commencing at 3:50 p.m.
[17]
[18]
[19]
         FLYNN REPORTING ASSOCIATES
[20]     Professional Court Reporters
[21]          One Exchange Place
         Worcester, Massachusetts 01608
[22]     (508)755-1303 * (617)536-2727
         TOLL FREE: (888)244-8858
[23]        Fax (508)752-4611
[24]

Page 2

[1] APPEARANCES:
[2] FOR THE COMPLAINANT:
[3]   ELLIOTT LAW OFFICE
      By: Marcia L. Elliott, Esq.
[4]   307 Central Street
      Gardner, Massachusetts 01440
[5]
   FOR THE RESPONDENT:
[6]
   BOWDITCH & DEWEY, LLP
[7]   By: Jonathan R. Sigel, Esq.
      311 Main Street
[8]   Worcester, Massachusetts 01608
[9] Also Present: Louis P. Alberghini
                David Witman, Esq.
[10]
[11]         INDEX
[12]
[13] Witness: Richard Brault
[14]             Page
[15] Examination by Ms. Elliott   3
[16] Examination by Mr. Sigel    41
[17] Examination by Ms. Elliott  45
[18] EXHIBITS FOR IDENTIFICATION:
[19] None.
[20]
[21]
[22]
[23]
[24]

Page 3

[1]          PROCEEDINGS
[2]          STIPULATIONS
[3]    It is stipulated by and between
[4] counsel for the respective parties that the
[5] deponent will read and sign the deposition
[6] within thirty (30) days of receipt of the
[7] transcript. The filing and the notarization are
[8] hereby waived.
[9]    It is further agreed that all
[10] objections except as to the form of the question
[11] and motions to strike are reserved until the
[12] time of trial.
[13]    RICHARD BRAULT,
[14] having been first duly sworn,
[15] testified as follows to
[16] DIRECT EXAMINATION
[17] BY MS. ELLIOTT:
[18]    Q: I'm just going to give you some
[19] ground rules about the deposition. First of
[20] all, if you need to take break during the
[21] deposition, just let me know and I'll let you go
[22] out to do whatever you need to do.
[23]    If you don't understand a question
[24] that I have asked you, please ask me to rephrase

Page 4

[1] it, because if you answer the question I'm going
[2] to understand that you did understand the
[3] question when you gave the answer.
[4]    It will go smoother if you wait until
[5] I've asked my question before you give your
[6] answer, and also it will help her take down the
[7] information so she — she cannot do that if
[8] we're all talking at once.
[9]    You must answer verbally. You can't
[10] nod your head or give some other sort of non-
[11] verbal response. It's either a yes, no, or
[12] whatever, so she can hear you. So those are the
[13] ground rules. Okay?
[14]    A: Okay.
[15]    Q: Are you represented by an attorney
[16] here today?
[17]    A: Am I represented?
[18]    Q: Yes.
[19]    A: Other than these guys, no.
[20] (Witness indicating Attys. Sigel and Witman.)
[21]    Q: Okay. You're represented by the
[22] company's attorney; is that right?
[23]    A: Yes. I don't have my own attorney,
[24] if that's what you're asking me.

Page 41

[1] here.
[2]     (Brief pause.)
[3]     MS. ELLIOTT: Okay. I don't have any
[4] further questions.
[5]     MR. SIGEL: I just have a couple of
[6] follow-ups.
[7]             EXAMINATION
[8]             BY MR. SIGEL:
[9]     Q: Mr. Brault, when you were discussing
[10] your training before, were you ever given Lean
[11] Manufacturing training?
[12]    A: Yes — well, can you clarify the —
[13] does that mean during my whole career?
[14]    Q: No, I meant during your employment at
[15] Simonds.
[16]    A: Yes.
[17]    Q: When was that?
[18]    A: I would say approximately a year ago.
[19]    Q: And during your tenure at Simonds,
[20] has there been a reorganization of the
[21] engineering department?
[22]    A: Yes.
[23]    Q: Could you please describe that?
[24]    A: Well, after I took over the

Page 42

[1] engineering department, the engineering
[2] responsibilities were realigned and the
[3] engineers were basically given responsibility
[4] for specific product lines. Prior to that, they
[5] were just given jobs or projects that could have
[6] been anywhere in the plant. So the department
[7] was basically divided up, and engineers were
[8] given specific areas of responsibility, and
[9] that's primarily one of the biggest changes that
[10] we made.
[11]     The other, probably big thing that
[12] happened is that because they had responsibility
[13] for the whole line, they did whatever was
[14] required or needed within that line. There was
[15] no distinction between, you know: I'm a project
[16] manager, I'm a product manager — or whatever
[17] kind of a manager, and work divided up along
[18] those lines. It was: You're responsible for
[19] the line, and you're responsible for completing
[20] whatever needed to be done.
[21]    Q: You're saying that's how it is now?
[22]    A: Yes. And as a manager, I also have
[23] a — in addition to management responsibilities,
[24] I also have responsibilities for several product

Page 43

[1] lines on the floor.
[2]    Q: What are those?
[3]    A: Those would be PTA, it would be what
[4] we call our Line 39 butt welding department, and
[5] also the forge shop.
[6]    Q: So in fact you still work as a
[7] manufacturing engineer, in addition to your
[8] engineering manager duties; correct?
[9]    A: Yes.
[10]    Q: In total, Mr. Brault, approximately
[11] how many years experience have you had working
[12] as a manufacturing engineer?
[13]    A: Approximately 23, 24 years — well,
[14] no, I have to take five years out of there for
[15] Kontro experience. So 18 or 19, I guess.
[16]    Q: Immediately prior to coming to
[17] Simonds, who did you work for, again?
[18]    A: It was owned by Kennametal at the
[19] time, but that — that company, during my tenure
[20] at that company, we underwent three different
[21] changes of ownership.
[22]    Q: And that company was a competitor of
[23] Simonds; isn't that true?
[24]    A: Yes.

Page 44

[1]    Q: And so therefore, they make products
[2] similar to those made by Simonds, right?
[3]    A: Yes, virtually the same products.
[4]    Q: And how does that particular
[5] experience, working for a competitor, factor
[6] into your duties at Simonds?
[7]    A: Well, I think it gives me a broader
[8] perspective of what — of how to manufacture the
[9] product, having worked for other people and
[10] seeing how other people make the same — make
[11] the same product. Everybody does things a
[12] little differently, and some people do things
[13] better than others.
[14]     I also worked for Starrett's saw
[15] division as well, so I had — I worked for two
[16] competitors that manufactured similar products,
[17] before I went to Simonds.
[18]    Q: And prior to coming to Simonds, you
[19] testified that you had several years of
[20] experience as a manager or supervisor; correct?
[21]    A: Yes.
[22]    Q: And during that tame, did you ever
[23] manage other manufacturing engineers?
[24]    A: Part of the responsibility of senior

# EXHIBIT 8

Page 1

[1]              Volume I
                 Pages: 1-65
[2]              Exhibits: None
[3]     COMMONWEALTH OF MASSACHUSETTS
        COMMISSION AGAINST DISCRIMINATION
[4]
[5] LOUIS P. ALBERGHINI,
[6]      Complainant
[7]   vs.         No. 01SEM10657
[8] SIMONDS INDUSTRIES, INC.,
[9]      Respondent
[10]
[11]
[12] DEPOSITION of PETER DUPERRY called as a
     witness by the Complainant, pursuant to the
[13] applicable provisions of the Massachusetts Rules
     of Civil Procedure, before Susan E. Lepore,
[14] Registered Professional Reporter and Notary
     Public in and for the Commonwealth of
[15] Massachusetts, taken at the Elliott Law Office,
     307 Central Street, Gardner, Massachusetts, on
[16] Friday, January 3, 2003, commencing at 2:15 p.m.
[17]
[18]
[19]
            FLYNN REPORTING ASSOCIATES
[20]        Professional Court Reporters
[21]           One Exchange Place
            Worcester, Massachusetts 01608
[22]        (508)755-1303 * (617)536-2727
               TOLL FREE: (888)244-8858
[23]           Fax (508)752-4611
[24]

Page 2

[1] APPEARANCES:
[2] FOR THE COMPLAINANT:
[3]   ELLIOTT LAW OFFICE
      By: Marcia L. Elliott, Esq.
[4]   307 Central Street
      Gardner, Massachusetts 01440
[5]
    FOR THE RESPONDENT:
[6]
      BOWDITCH & DEWEY, LLP
[7]   By: Jonathan R. Sigel, Esq.
      311 Main Street
[8]   Worcester, Massachusetts 01608
[9] Also Present: Louis P. Alberghini
                  David Witman, Esq.
[10]
[11]       INDEX
[12]
[13] Witness: Peter Duperry
[14]          Page
[15] Examination by Ms. Elliott    3
[16] Examination by Mr. Sigel     58
[17] Examination by Ms. Elliott   59
[18]
[19] EXHIBITS FOR IDENTIFICATION:
[20] None.
[21]
[22]
[23]
[24]

Page 3

[1]              PROCEEDINGS
[2]              STIPULATIONS
[3]     It is stipulated by and between
[4] counsel for the respective parties that the
[5] deponent will read and sign the deposition
[6] within thirty (30) days of receipt of the
[7] transcript. The filing and the notarization are
[8] hereby waived.
[9]     It is further agreed that all
[10] objections except as to the form of the question
[11] and motions to strike are reserved until the
[12] time of trial.
[13]    PETER DUPERRY,
[14] having been first duly sworn,
[15] testified as follows to
[16] DIRECT EXAMINATION
[17] BY MS. ELLIOTT:
[18]    Q: Mr. Duperry, I have asked you here
[19] today, or subpoenaed you here today to take your
[20] deposition relative to this matter involving
[21] Simonds Industries and Lou Alberghini.
[22]    I just would like to go through some
[23] ground rules with you so we both understand each
[24] other in taking this deposition. If you don't

Page 4

[1] understand a question that I ask you, you can
[2] ask me to rephrase it or, you know, clarify it,
[3] whatever you need to understand the question.
[4] If you answer the question, I will understand
[5] that you understood what I asked you. Okay?
[6]    A: Uh-hum.
[7]    Q: Also, the court reporter needs you to
[8] answer verbally. You can't nod your head, you
[9] need to give a verbal response —
[10]   A: Okay.
[11]   Q: — so that she can take that down.
[12] It also will work better if you wait until I've
[13] asked the question before you answer, and so
[14] forth. If we're all talking at once, it's hard
[15] for her to take down the information, and again,
[16] I want to make sure that you understand the
[17] question that you're being asked.
[18]    If you need to take a break at any
[19] time, just advise me of that and we'll arrange
[20] it so that you can take a break. Okay? Do you
[21] understand those rules?
[22]    A: Yes, I do.
[23]    Q: Okay. Are you represented by a
[24] lawyer here today?

Page 61

[1] A: Yes, that's correct.
[2] Q: What other skills do the projects
[3] that you work on, and have worked on, require
[4] you to use?
[5] MR. SIGEL: I'm sorry, could I get
[6] that question again?
[7] MS. ELLIOTT: What projects that he
[8] has currently been working on, and projects that
[9] you did work on since you've been employed at
[10] Simonds, require you to use? What skills?
[11] A: I'm sorry, that's kind of —
[12] Q: What skills did the projects that you
[13] have been working on at Simonds currently, and
[14] the ones that you worked on previously, the
[15] entire time that you've been employed, what
[16] skills do those projects require you to use?
[17] A: A vast amount of computer skills,
[18] verbal skills, oral skills, lots of mechanical
[19] engineering skills.
[20] Right now I'm designing a test
[21] fixture to determine the force needed to remove
[22] a piece of carbide from the carbide tip band saw
[23] blade. This uses force transducers, and I had
[24] to calculate the shear stress needed to remove

Page 62

[1] the carbide, in order to derive the amount of
[2] forces necessary for each band saw blade size.
[3] It also requires a knowledge of machine design,
[4] because I — the whole test fixture is using
[5] machine components.
[6] You know, there's computer skills,
[7] some CNC programming I do on a regular basis.
[8] It's a broad range, but a lot of it does have to
[9] do with mechanical engineering.
[10] Q: Okay. And other skills as well?
[11] A: Yes.
[12] Q: Actually, I do have a couple more
[13] questions for you. Have you been made any
[14] promises regarding your testimony here today, by
[15] anybody from Simonds Industries?
[16] A: No, I was not.
[17] Q: And have you been threatened in any
[18] way by anyone from Simonds Industries —
[19] A: No, I haven't.
[20] Q: — regarding your testimony today?
[21] A: No, I have not.
[22] MS. ELLIOTT: Okay. I don't have any
[23] other questions.
[24]     (Whereupon, at 3:45 p.m.,
    the deposition ended.)

Page 63

[1] I have read the foregoing, and it is a
[2] true transcript of the testimony given by me at
[3] the taking of the subject deposition.
[4]
[5]
[6]
[7]
[8]
[9]
[10]         PETER DUPERRY
[11]
[12]
[13]
[14]
[15]
[16]         DATE
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]

Page 64

[1]     ERRATA SHEET
[2]     I WISH TO MAKE THE FOLLOWING CHANGES
[3] IN THE FOREGOING TRANSCRIPT OF MY DEPOSITION:
[4]
[5] PAGE  LINE  CHANGE       REASON
[6]
[7]
[8]
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22] DATE: _____
[23]         PETER DUPERRY
[24]