## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

## CENTRAL SECTION

LOUIS P. ALBERGHINI,
**Plaintiff,**

V.

SIMONDS INDUSTRIES, INC.,
**Defendant.**

CIVIL ACTION NO. **04-40092-FDS**

### PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff submits this surreply to Defendant's reply brief in which Defendant alleges that Plaintiff failed to raise any genuine issue of material fact and alleges that Plaintiff's opposition to Defendant's motion for summary judgment is untenable factually and legally, and inaccurate and misleading. Contrary to the Defendant's allegations concerning Plaintiff's opposition to summary judgment, the Plaintiff has pointed to specific material facts that are in genuine dispute and this precludes the court from finding summary judgment in favor of Defendant.

Defendant in its reply brief simply contends that only Defendant's version of the facts is the accurate version. The inference that the Defendant's actions were non-discriminatory is only that, an inference. Standing alone, it is insufficient to overcome the existence of genuine issues of material fact with regard to the question of pretext. Washington v. Milton Bradley Company, 340 F. Supp. 2d 69, 78 (D. Mass. 2004). Whereas, the material facts, here, lead to more than one conclusion, the conclusion may be in the Plaintiff's favor.

The First Circuit has defined "material" to mean "a contested fact that has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." McCarthy v. Northwest Airlines, Inc. 56 F.3d 313, 315 (1st Cir. 1995). The First Circuit has defined "genuine" as "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." Id. It is clear from the evidence of this case that a jury could find for the Plaintiff.

Furthermore, a jury, rather than the court, must determine issues of credibility. In fact, "only if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir., 1997). Also, unsettled issues of motive and intent as to the conduct of any party will normally preclude the court from granting summary judgment. Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir., 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury").

Finally, in a summary judgment context the court must determine "whether plaintiff has produced sufficient evidence that he was discriminated against due to his [age] to raise a genuine issue of material fact." Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45 (1st Cir. 2002); Rivas Rosado v. Radio Shack, Inc., 312 F.3d 532, 534 (1st Cir. 2002). Summary judgment must be denied if once the court has reviewed the evidence submitted by the parties in the light most favorable to the plaintiff it finds there is sufficient evidence from which a trier of fact could conclude that the reasons adduced for the charged conduct are pretextual and that the true motive was discriminatory. Santiago-Ramos v. Centennial, 217 F.3d 46, 57 (1st Cir. 2000); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 20 (1st Cir.1999).

2

For all of these reasons, summary judgment in favor of the Defendant is not appropriate.

## II.    DISCUSSION

A.    <u>Plaintiff's evidence raises issues of material facts that cannot be decided by summary judgment and are required to be tried.</u>

      *1.    The evidence clearly shows that there is a question of fact as to whether Defendant's managers considered age in conducting the layoffs in 2001 as it did in 2000 and even prior to that time.*

            (a)    <u>The discriminatory intent of Raymond Martino's, Simonds Chief Operating Officer's, statement is for a jury to decide taking in consideration all of the evidence that is admitted at trial.</u>

There is no dispute between the parties that Mr. Martino made the statement to the effect that the promotional practices of the company had resulted in a conventional wisdom mentality and a lack of diversity in the management ranks.  In fact, Mr. Martino admitted under oath that he made the statement in the trial of another matter.  A jury must decide what Mr. Martino intended by that statement and the credibility of his explanation in light of all the evidence.  However, the statement coupled with other evidence creates a genuine issue of material fact to be tried.  At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." <u>Maldonado-Denis v. Castillo-Rodriguez,</u> 23 F.3d 576, 581 (1st Cir., 1994).  Within three months after Mr. Martino made such statement, an entire level of management, which contained all age-protected employees was eliminated in January 2000.  <u>See</u> Appendix 1, Deposition of John Jordan at pp. -40-42.  Three of those managers including the Plaintiff, Ronald Larsen, and Richard Souliere[1] were ages 60, 61 and 59 at that time.  <u>See</u> Appenxix 2, Exhibit A.  The only manager of that group rehired as a manager was James

---

[1] Mr. Souliere was on a leave of absence at the time of the layoff according to Mr. Jordan, the Plant Manager.  Mr. Jordan testified at his deposition that Mr. Souliere would have been laid off.  <u>See</u> Appendix 3, John Jordan Deposition at 84.  However, he was eligible for permanent disability leave.  <u>See</u> Appendix 4, John Jordan Affidavit at ¶ 3.

Bourque who was only 48 years of age at the time. <u>See</u> Appendix 2, Exhibit A. This initial layoff included the Plaintiff, Mr. Alberghini. Although he was rehired for a short period, his employment ended when he was terminated in May 2001. He was not rehired as a manager. Furthermore, all employees terminated from the Fitchburg facility in 2000 and 2001 were managerial, professional or administrative employees. <u>See</u> Appendix 2, Exhibit A. Moreover, the evidence further highlights the age conscious remark of Mr. Martino because the Vice President of Manufacturing, Ron Owens, testified that the level of management referred to above was eliminated before the company began a series of layoffs allegedly associated to cost reductions and lost sales. <u>See</u> Appendix 5, Deposition of Ron Owens at p. 138. The Defendant claims, however, that the layoffs beginning in 2000 were inter-related and ongoing through 2003. <u>See</u> Affidavit of Ilda Thibodeau at ¶ 6 attached to Defendant's Statement of Undisputed Facts. Therefore, the statement is admissible to show the intent or motive of the Defendant in conducting the reductions in force and/or the selection of the individuals for termination which according to the Defendant began in 2000 and continued through 2003. Courts may not engage in the jury function of "drawing ... legitimate inferences from the facts...." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000). Courts also should not resolve factual issues or make credibility determinations on summary judgment; that is the jury's job. <u>Id</u>.

        (b)     <u>There is contradicting testimony that Raymond Edson made the decision to rehire the Plaintiff for the Project Engineer position and even if Mr. Martino and Mr. Owen indirectly approved the temporary rehiring of the Plaintiff it is not indicative of the intent or motiviation behind the reductions in force.</u>

In his first deposition, John Jordan testified that Raymond Edson, who supervised the engineering department at the relevant time period in 2000, made the decision to rehire the

Plaintiff for the project engineer position. See Appendix 6, John Jordan Deposition at p. 52. Mr. Jordan then testified at his second deposition that he, Ron Owens and Mr. Edson discussed the rehiring of the Plaintiff for the project engineer position. See Apendix 7, John Jordan Deposition at p. 102. The Plaintiff testified that Mr. Edson and Mr. Jordan rehired him. See Appendix 8, Deposition of Lou Alberghini at p. 96. There is a genuine issue to be tried regarding who directly made the decision to rehire the Plaintiff and whether such evidence is indicative of the nondiscriminatory motivation of Mr. Martino or Mr. Owens.

Even if Mr. Martino and/or Mr. Owens approved the rehiring of the Plaintiff, that fact alone, does prove that the termination of the Plaintiff in May 2001 was nondiscriminatory. It is plausible that the Defendant's motivation in terminating the Plaintiff a second time was discriminatory because the Plaintiff's rehire was only temporary.

        (c)    Patricia Jearman's affidavit, her testimony and the Defendant's own production of documents during discovery of this matter create a genuine dispute of material facts regarding the Defendant's use of age data in selecting individuals, including the Plaintiff, for layoff in 2001.

Ms. Jearman testified at a deposition and stated in her affidavit that Ms. Thibodeau had requested name and age information in the past for reductions in force. Both her affidavit and her testimony are based on her personal knowledge and observations. In relevant part, she testified as follows:

Q.    Okay. But my question specifically was, did you -- do you believe that the company, during your employment, had a deliberate practice of laying off older employees and replacing them with younger employees?

A.    Yes, based upon what I had witnessed there for new hires versus, you know, coming in.

Q.    Okay. And please give me all of the facts on which you base that opinion.

A.     I would see -- those people who were laid off or let go or separated that I had compiled on these lists, they would be gone and  then there would be replacements coming in for these individuals who would -- I would know their ages. And they were much younger people, or they were family members who didn't have experience and other people were let go.

See Appendix 9, Jearman Deposition at pp. 76-77.

While the Defendant states that the age information Ms. Thibodeau collected relative to the 2001 layoff was to perform a disparate impact analysis, the fact is that additional information would have been required to perform such a disparate impact analysis. Ms. Thibodeau testified that she made two lists in connection with the terminations that included nothing but age, name, birthdate and status.  See Appendix 10, Thibideau trial transcript at p. 3-6.  Furthermore, Ms. Thibodeau claimed she prepared an impact analysis for the 2000 terminations and that she shredded it, but never told legal counsel for the plaintiff in that case. See Appendix 11, Thibideau trial transcript at pp. 2-210 -211 and Appendix 10.  At the request of Plaintiff in discovery of the MCAD case, she made the list referred to as "Exhibit A" and Plaintiff's Appendix 4 attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment. See id.  Ms. Jearman testified at her deposition that she was familiar with the legal requirements for a disparate impact analysis and the Defendant did not compile that kind of information.  In relevant part, Ms. Jearman, who is a human resource professional, testified as follows:

Q.     So then what was it about your doing that for Simonds that you would distinguish from what you've done at Spectro, if anything?

A.     I was only asked to provide specific information regarding their name and their age when I have other information that would have been relative. And when you're doing a riff (phonetic spelling), to be prudent you need other additional information which our department would have only been able provide.

See Appendix 12, Jearman Deposition at p. 88.

6

Furthermore, Ms. Jearman testified in another matter that there was no doubt in her mind that the information she was asked to compile, which consisted only of name and age, was provided for use in a reduction of force. See Appendix 13, Jearman transcript testimony page 3-63.

Finally, certain documents Defendant produced in discovery of this matter abrogate the Defendant's contention that Defendant performed a disparate impact analysis after the selection of the employees for termination. The documents attached to Plaintiff's opposition at Appendix 14 clearly show that the Defendant was considering age during and prior to the termination of employees. The documents are worksheets of who the Defendant selected to terminate and who the Defendant chose to keep and the age of those employees. In Hamilton v. 1st Source Bank, 895 F.2d 159, 162 (4th Cir. 1990), the court held that age consciousness was reflected by the employer's recording the ages of its employees. Similarly, in Starceski v. Westinghouse Electric Corp., 54 F.3d 1089, 1096 (3d Cir. 1995), the court found that evidence that a second level manager gave orders to set up older workers for termination in an upcoming reduction in force, constituted direct evidence of discrimination. Where a manager writes down the ages of job applicants and occasionally underlines their ages, circles the ages or calculates the ages on the job application forms, that constitutes direct evidence of age discrimination. Corneveaux v. CUNA Mutual Insurance Group, 76 F.3d 1498, 1505 (10th Cir. 1996).

> (d)    The affidavit and testimony of Patricia Jearman is admissible to show a pattern and practice of discrimination and the motive and intent of Ilda Thibodeau concerning the 2001 reduction in force.

Courts have held that lay witness testimony is admissible in cases where such testimony is based on observations, not conclusions. Stumph v. Thomas & Skinner Inc., 770 F.2d 93, 97 (7th Cir. 1985) (holding it was error in age case to grant summary judgment, in part, because trial

7

court treated as irrelevant co-worker testimony that they did not retire from company voluntarily).

The proffered testimony of Ms. Jearman concerns statements made by the Defendant's Manager of Compensation and Benefits, Ms. Thibodeau. There is no dispute that she was an agent of the Defendant, a party opponent, when she made the alleged statement. Therefore, her statement can be imputed to the Defendant as an admission by a party opponent. Furthermore, the statement allegedly made by Ms. Thibodeau that the order [to sort the employees by age] "came from the top," was made by Ms. Thibodeau as an agent of Defendant and the very words of her statement show that she "manifested an adoption or belief" in their truth. See Fed. R. Evid. 801(d)(2)(B). Statements by declarants in positions of responsibility that reflect the employer's policies or the employment atmosphere are admissible under Fed.R.Evid. 801(d)(2)(D). Kelley v. Airborne Freight Corp. 124 F.3d 64, 72 (1ˢᵗ Cir. 1997).

The Defendant's reliance on Hillstrom v. Best Western TLC Hotel, 354 F.3d 27 (1st Cir. 2003) is misplaced. If the Plaintiff sought to admit Ms. Jearman's testimony not for the truth of the matter asserted, the testimony would still be admissible. In this case, Ms. Jearman will testify at trial as to her own observations and statements made directly to her and is relevant even if not offered for its truth because the statements were instructions, directives or orders that caused her to take action (i.e. prepare spreadsheets by name and age). United States v. Murphy, 193 F.3d 1, 5 (1st Cir. 1999). The statements in Hillstrom were not sufficient to survive summary judgment because they appear to have been hearsay statements offered by the plaintiff rather than statements of any other witnesses, which is not the case here. Hillstrom at 32. Whereas Ms. Jearman's proffered testimony concerns an admission by a party opponent, her testimony does not constitute inadmissible hearsay and must be permitted. In any event, in Celotex Corporation

8

v. Catrett, 477 U.S. 317, 324, (1986), the court found that the non-moving party need not always produce evidence in a form that would be admissible at trial in order to avoid summary judgment.

Moreover, even though the incident Ms. Jearman testifies to occurred prior to 2001, it is admissible and significant because Ms. Thibodeau was involved on both occasions and was in a position to influence company policies and practices. In Hurley v. Atlantic City Police Dept., 1999 WL 150301 (3d Cir. 1999) (not error to admit testimony of similar acts of sexual harassment that were remote in time to incidents in question because such evidence was probative of employer's knowledge and was relevant to rebut employer's defense. In Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 139-40 (2000), the United States Supreme Court reversed the Fifth Circuit Court of Appeals' decision that had held age-related comments may serve as sufficient evidence only if the remarks are in the direct context of the termination. Therefore, the court cannot ignore this evidence.

2. *The fact that the Plaintiff was not rehired as a manager is telling of Mr. Martino's motivation in terminating older managers and hiring younger management, professional and administrative personnel.*

The Defendant attempts to persuade the court that the fact that the Plaintiff was not rehired to a management position after his termination in January 2000 is irrelevant and that the Plaintiff never claimed the decision to rehire him to a nonmanagement position was discriminatory. The Plaintiff did not bring a formal charge of discrimination concerning that undisputed fact. However, it is still admissible evidence to show the motivation behind the layoffs that began in 2000 and resulted in the Plaintiff's termination again in 2001. The Plaintiff testified at his deposition that "in the sense that [he] was a manager in the department going down to the level of engineer. . ." he considered the project engineer position a demotion from

9

his previous position.  See Appendix 8, Alberghini Deposition at p. 98.  The Plaintiff also

testified that he felt the 2000 layoff was an effort to get rid of older employees and that he was

rehired to avoid a lawsuit.  See Appendix 8, Alberghini Deposition at pp. 80 and 96.  However,

he did not file a formal complaint because as he stated "you start making noise and you're out

the door."  See Alberghini Deposition at p. 96.

It is well-settled that evidence pertaining to time-barred acts of discrimination is

admissible to prove later acts of discrimination that are not time-barred for the purposes of

establishing liability.   National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct.

2061, 153 L. Ed. 2d 106 (2002); Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2000)

(the court held that consideration of the entire scope of a hostile work environment claim,

including behavior alleged outside the statutory time period, is permissible for the purposes of

assessing liability); Cosgrove v. The Greater New Orleans, 1999 WL 30958 *1 (E.D.La. 1999)

(barring time-barred testimony because it was too remote to the circumstances involved, but

recognizing that it is often admissible to prove intent).  Evidence, which is time-barred, is

admissible to provide background evidence. Gipson v. KAS Snacktime Co., 171 F.3d 574, 580

(8th Cir. 1999) (allowing hostile work environment evidence from pre-limitations period to

provide background information showing that work environment was hostile and abusive; FED.

R. EVID. 401 which tilts toward admission is not limited to time period in charge-filing

limitations).  Based upon Mr. Martino's observation in October 1999 and the terminations that

occurred shortly thereafter at his direction, the evidence suggests that his motive was based on

age.

> 3.    *The Defendant's managers conflicting testimony regarding the timing of finanial problems and the reasons for the reduction in force create a genuine issue of material fact to be tried.*

When an employer, at different times, puts forth different and arguably inconsistent reasons for its actions, "a jury may infer that the articulated reasons are pretextual." Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000). In Dominguez-Cruz, the First Circuit reversed a grant of summary judgment noting that the employer's reason for terminating the 55-year old plaintiff changed repeatedly from the explanation given to the plaintiff, the reason articulated in the defendant's answer to the complaint, and in deposition testimony. Id. at 431-32.  In this case, the Plaintiff was not really given a reason for his termination in May of 2001 although vaguely economic reasons may have been mentioned. See Plaintiff's Appendix 7, Jordan Deposition II at pp. 24, 82-84, Plaintiff's Appendix 8, Alberghini Deposition I at p. 84 attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  The Defendant claims his termination was the result of the reorganization or restructuring of the engineering department.  However, the restructuring simply amounted to the engineers being assigned to one product line. See Plaintiff's Appendix 9, Brault Deposition at pp. 41-42, Appendix 15, Duperry Deposition at pp. 37-38 Appendix 17, Dexter Deposition at p. 52 attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  Importantly, job descriptions that were developed (curiously in May 2001) for supposed restructuring purposes were never given to the affected employees. See Duperry Deposition at pp. 45-46, Dexter Deposition at pp. 68-69, and Brault Deposition at pp. 35-37 attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgement. The facts are also in dispute as to when the restructuring took place and whether it was the precipatant to the Plaintiff's termination.  The Plaintiff had no knowledge of the reorganization of the department prior to his termination.

11

It is for a jury to determine the weight of the facts and the credibility of Defendant's statements relative to the financial condition of the Defendant given the conflicting evidence of the timing of the financial decline of the company in latter 2001. Mr. Jordan, the former Fitchburg plant manager states that the company was financially sound at Fitchburg and that it was not until after <u>September 2001</u> well after Plaintiff's termination that financial issues arose concerning the repayment of a bond. <u>See</u> Appendix 4, Affidavit of John Jordan, ¶ 4. The Defendant also continued to acquire new companies despite the Defendant's reasoning for such acquisitions. The company continued to pay bonuses and Mr. Martino hired new managers and professionals that were much younger at significant salaries.

> 4.    *The Plaintiff's evidence is not a mischaracterization of the reorganization of the engineering department or a mischaraterization of the Jeremy Dexter's position at the relevant time, but creates a genuine issue to be tried because it is evidence that could lead a jury to find for the Plaintiff.*

Again, the Defendant seeks to persuade the court that the Plaintiff mischaracterizes evidence when the evidence establishes a genuine issue to be tried. Simply put, there is contradicting evidence to Defendant's version of the facts. There is no denial that Mr. Dexter is listed on the company's organizational chart at the relevant time as being a project engineer. He and the Plaintiff worked on projects together prior to Plaintiff's termination. There is no denial that the job description for the Manufacturing/Product Engineer position was written in May 2001 at the same time the Plaintiff was terminated. Regardless of Mr. Dexter's material science training, he and Mr. Alberghini performed the same kinds of tasks while the Plaintiff was still employed by the Defendant. There is no denial that Mr. Dexter, Richard Brault and Peter Duperry, all of whom are much younger than the Plaintiff, assumed the projects of the Plaintiff after his termination. <u>See</u> Plaintiff's Appendix 7, Jordan Deposition II at pp. 24, 82-84, Plaintiff's Appendix 8, Alberghini Deposition I at p. 84, Plaintiff's Appendix 9, Brault

12

Deposition at pp. 41-42 attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment. Evidence that "plaintiff's job functions were absorbed by several different employees of defendant" is sufficient to establish the fourth prima facie element of discrimination. Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 2005 U.S. App. LEXIS 3016, 12-13 (1st Cir., 2005).

Furthermore, the Plaintiff did not mischaracterize the finding of the Massachusetts Supreme Judicial Court in Sullivan v. Liberty Mutual Insurance Company 444 Mass. 34, 44 (2005). The court referred to the fourth prong of the prima facie case in a reduction in force case as "nonsensical" by quoting that the prong is "unworkable because the plaintiff's position no longer exists" from Lewis v. City of Boston, 321 F.3d 207; 214 n. 6 (1st Cir. 2003). It is the same as stating that the job is eliminated in its entirety so theoretically there should be no duties of that position to perform. In this case, however, younger employees assumed the Plaintiff's duties and one of those employees Mr. Dexter held the same title as the Plaintiff at the time of the Plaintiff's termination in May 2001. See Plaintiff's Appendix 1, Appendix 16 at ¶ 10 attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

5. *The Plaintiff's expert report is admissible and probative of the Plaintiff's prima facie case, and furthermore, the Defendant's expert witness has given testimony contrary to his opinion in this matter.*

In the First Circuit, statistical analyses have been held admissible in disparate treatment cases unless they are so incomplete as to be inadmissible as irrelevant. McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 303 (1st Cir. 1998). Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Hartley v. Dillard's, Inc., 310 F.3d 1054, 1061 (8th Cir., 2002) quoting Bonner v. ISP Tech., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001).

Statistical evidence is an appropriate method for demonstrating both a *prima facie* case of discrimination and pretext. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 804, (1973). Statistical evidence is also useful for demonstrating a "general pattern" of discrimination in the defendant's employment decisions. <u>Miles v. M.N.C. Corp</u>, 750 F.2d 870, 873 (11th Cir. 1985).

The Defendant contends that the sample of employees chosen by Dr. Cobb is arbitrary because it includes only "some of the individuals laid off from the Fitchburg facility." The Defendant cites <u>Shenker v. Lockheed Sanders, Inc.</u>, 919 F. Supp. 55, 59-60 (D. Mass. 1996) in support of its position. <u>Shenker</u> simply provides that in order to utilize statistics to demonstrate disparate impact, there must be a comparison between the number of protected employees in (1) the set of terminated employees, and (2) the pool of employees from which the terminated employees were drawn and there must be a showing that there is a significant discrepancy in the incidence of protected status in the two pools. <u>Id</u>. at 59. <u>Shenker</u> offers no guidance on the pool of employees that are to be compared and certainly does not establish that the sample of employees chosen in this case were either arbitrary or invalid. There is nothing in the <u>Shenker</u> case to support the Defendant's conclusion that "all the Company's locations" would have to be included in the statistical analysis. Furthermore, there was no expert testimony in <u>Shenker</u>. The plaintiff in that case testified that 50% of the employees (7 out of 14) laid off were over the age of 40. <u>Id</u>. Nothing in the <u>Shenker</u> opinion suggested that all of Lockheed Sanders, Inc.'s locations had to be included in the analysis. Contrarily, the court stated to complete his demonstration that older employees in the Operations Division were fired at a disproportionate rate, <u>Shenker</u> has to provide the court with comparative demographic information on the age of employees in the Operations Division which indicates there is a statistically significant discrepancy. <u>Id</u>. at 59-60.

14

The Defendant next turns to <u>Alves v. American Response of Massachusetts, Inc.</u>, 76 F.
Supp. 2d 119, 122 (D. Mass. 1999) where the plaintiff proposed to select a "statistical" group in
which he was the only member and the court obviously found the pools the plaintiff proposed did
not have significant meaning for statistical purposes.

The Defendant criticizes the comparison of employees performed by Plaintiff's expert.
This criticism is unfounded.  Dr. Cobb relied on the job codes the Defendant provided in
discovery for managerial, professional and administrative personnel.  Mr. Bourque was excluded
from the comparison because he was rehired immediately after the January 2000 terminations.
Ms. Lanides was also rehired and in any event she was a clerical employee so she could not be
compared to group of managers and professionals. The comparitors that a plaintiff provides need
not be perfect replicas, but they must bear a reasonably close resemblance with respect to the
pertinent facts and circumstances. At bottom, a court must determine whether a prudent person,
looking objectively at the incidents, would think them roughly equivalent and the protagonists
similarly situated. <u>Washington v. Milton Bradley Company</u>, 340 F. Supp. 2d 69, 77 (D. Mass.
2004). In this case, Dr. Cobb's comparison meets this test.

The Defendant also complains about the limitation of Dr. Cobb's analysis to the
Fitchburg facility.  Under 29 C.F.R. § 1625.22, decisional unit is typically no broader than the
facility, and "facility" as it is used throughout this section generally refers to place or location
[and] in some circumstances terms such as "school," "plant," or "complex" may be more
appropriate.[2]  Furthermore, if an employer seeks to terminate employees by exclusively
considering a particular portion or subgroup of its operations at a specific facility, then that
subgroup or portion of the workforce at that facility will be considered the decisional unit.  <u>Id.</u>

---

[2] This case involves the Defendant's separation pay policy, which provides severance to
employees in exchange for a waiver although the waiver was invalid here.

The determination of the appropriate class, unit, or group, and job classification or organizational unit for purposes of section 7(f)(1)(H) of the ADEA must be made on a case-by-case basis. Id. Moreover, employees who work in different work units or different plants may or may not be "similarly situated." Hopper v. Hallmark Cards, 87 F.3d 983, 989 (8th Cir. 1996). The Defendant set the appropriate pool here when it indicated it was eliminating a level of middle management at the Fitchburg facility in January 2000. Relevant to this case, the decision-making unit was the Fitchburg plant, and the decision-makers were supervisors from that facility (i.e. John Jordan and Chip Holm) who were ultimately directed by Ray Martino, CEO to terminate the Plaintiff.

Finally, the Defendant criticizes Plaintiff's expert's sample size. The court has also rejected a defendant's argument that the expert's analysis was deficient since it included an insufficient sample size. McMillian at 303. In LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 844 (1st Cir., 1993), the court concluded that a sample of three is too small a number from which to draw deductions where two of the three people discharged by defendant pursuant to a reduction in force belong to the protected class. However, LeBlanc has been distinguished where other evidence of age discrimination is present and it is distinguishable in this case. See Currier v. United Technologies Corporation, 2004 U.S. App. LEXIS 26798 * 17 and McMillan at 303 n. 10. In fact, the Defendant's expert, Craig Moore, provided expert services in the Currier case in which he used and defended a small sample as being statistically significant. See Appendix 14, Craig Moore Trial Transcript pp. 4-34 – 4-37.

Likewise, in Kulling v. Grinders for Industry, Inc., 115 F. Supp.2d 828, 839 (E.D. Mich. 2000), the court allowed a statistical analysis where sample size was limited to 69 salaried employees, of whom 7 were discharged and all 7 were older than age 50. Accordingly, the court

in <u>Kulling v. Grinders for Industry, Inc.</u>, 185 F.Supp. 2d 800, 806 (E.D.Mich. 2002), allowed expert testimony over the objections of the employer that the sampling size was too small in a reduction in force age discrimination claim. The court reasoned that if the methodology was wrong, the employer could demonstrate that by presenting expert testimony of its own.

If, however, the testimony turns on a statistic that is plus or minus two standard deviations, a common statistical measurement, or <u>if small sample sizes are analyzed using specific statistical tests designed to analyze small samples, then it is likely to be admitted</u>. See <u>Sheehan v. Daily Racing Form, Inc.</u>, 104 F.3d 940, 942 (7th Cir. 1997), cert. denied 521 U.S. 1104 (1997) (<u>emphasis provided</u>) (the case relied upon by Defendant here applying Daubert to exclude the plaintiff's expert's testimony in an age case where the defense claimed the statistician made glaring omissions in his analysis, failed to explain the omissions and failed to consider important and "obvious" variables). There are no such omissions in this case. Even small samples are not per se unacceptable. <u>Freeman v. Package Machinery Co.</u>, 865 F.2d 1331, 1342 (1st Cir., 1988). <u>See also</u> <u>Fudge v. Providence Fire Dep't</u>, 766 F.2d 650, 658 (1st Cir. 1985) ("in cases involving a narrow data base, the better approach is for the courts to require a showing that the disparity is statistically significant, or unlikely to have occurred by chance, applying basic statistical tests as the method of proof"). This is the approach taken by Dr. Cobb. <u>See</u> Cobb Report at p. 3. More importantly, the Federal Judicial Center, *Reference Manual on Scientific Evidence*, 2nd ed., (Federal Judicial Center, 2000) recognizes that results from small samples may be just as significant. In relevant part the reference manual states at p. 126, n. 145:

> For simplicity, the numerical examples of statistical inference in this reference guide presuppose large samples. Some courts have expressed uneasiness about estimates or analyses based on small samples; indeed, a few courts have refused even to consider such studies or formal statistical procedures for handling small samples. *See, e.g.,* Bunch v. Bullard, 795 F.2d 384, 395 n. 12 (5th Cir. 1986) (that 12 of 15 whites and only 3 of 13 blacks passed a police promotion test

17

created a prima facie case of disparate impact; however, "[t]he district court did not perform, nor do we attempt, the application of probability theories to a sample size as small as this" because "[a]dvanced statistical analysis may be of little help in determining the significance of such disparities"); United States v. Lansdowne Swim Club, 713 F. Supp. 785, 809–10 (E.D. Pa. 1989) (collecting cases). Other courts have been more venturesome. *E.g.,* Bazemore v. Friday, 75 1 F.2d 662, 673 & n.9 (4th Cir. 1984) (court of appeals applied its own *t*-test rather than the normal curve to quartile rankings in an attempt to account for a sample size of nine), *rev'd on other grounds,* 478 U.S. 385 (1986).

Analyzing data from small samples may require more stringent assumptions, but there is no fundamental <u>difference</u> in the meaning of confidence intervals and *p*-values. If the assumptions underlying the statistical analysis are justified—and this can be more difficult to demonstrate with small samples—then confidence intervals and test statistics are no less trustworthy than those for large samples. Aside from the problem of choosing the correct analytical technique, the concern with small samples is not that they are beyond the ken of statistical theory, but that (1) the statistical tests involving small samples might lack power, and (2) the underlying assumptions may be hard to validate.

Dr. Cobb's analytical technique for a small sample size is correct and the power was not lacking in the results.

Furthermore, Dr. Cobb's comparison of new hires versus terminations in the reduction in force is an appropriate statistcal comparison. Statistics showing that younger workers have a disproportionately lower rate of discharge and, conversely a higher new hire rate, than their older counterparts, are considered probative of age discrimination. <u>See</u> <u>Smith v. General Scanning Inc.</u>, 876 F.2d 1315, 1319 (7th Cir. 1989); <u>Simpson v. Midland-Ross Corp.</u>, 823 F. 2d 937 (6th Cir. 1987). This is true even if the positions being compared are wholly dissimilar but the retention rates or conversely the hire rates are dramatically different amongst different age groups. <u>Blistein v. St. John's College</u>, 74 F.3d 1459, 1471 (4th Cir. 1996). Dr. Cobb's analysis is not a disparate impact analysis, which is what Judge Skinner referred to in the Shenker case. It is a disparate treatment analysis and this analysis was done specifically because of the majority of age-protected employees in the Defendant's workforce prior to the terminations. See Defendant's Reply Brief at n. 6.

B.    The Plaintiff's evidence when viewed together is sufficient to avoid summary judgment and to submit his case to a jury.

The question for the court is whether the evidence, taken as a whole, creates a factual issue as to whether the [adverse employment action] was motivated by age. Troupe v. May Department Stores, Inc., 20 F.3d 734, 736 (7th Cir. 1994). The First Circuit has taken a similar approach and characterized the McDonnell Douglas approach as "beside the point" where the plaintiff's evidence of the age-biased views of her supervisor and the flaws in the company's defense created a factual dispute. Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 35-36 (1st Cir. 2001). In light of the factual dispute about the defendant's motivation, the court need not examine the threshold showing of qualifications necessary to raise an inference of discrimination under the McDonnell Douglas *prima facie* model because the plaintiff's evidence raised an inference independent of that showing. Id.

In Troupe, Judge Posner warned that the courts must take a sort-of "holistic approach" and look at the case as a whole. The courts must focus on "bits and pieces" of evidence and determine if, when viewed together, there is enough evidence to suggest that the case should move forward. Troupe at 736. The Plaintiff can prevail if he shows any of the following: 1) suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; 2) evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff received systematically better treatment; or 3) that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. Id. Each type of evidence is sufficient by itself to support a judgment for the plaintiff, or the evidence can be used together. The Plaintiff, here has established such evidence and the Defendant is not entitled to summary judgment for that reason.

## III.    CONCLUSION

For all of the reasons set forth above, the Defendant's reply brief is a balkanization of the evidence when in fact a jury could conclude in favor of the Plaintiff and/or disbelief the Defendant's stated reasons for the reduction in force and the selection of individuals for termination.    Thus, the court should deny Defendant's motion for summary judgment.

LOUIS ALBERGHINI,
The Plaintiff
By his Attorneys,

Marcia L. Elliott, Esq. (BBO# 564291)
John M. Flick, Esq. (BBO# 652169)
Flick & Elliott, P.C.
307 Central Street
Gardner, MA 01440
(978) 632-7948

Dated: November 14, 2005

## CERTIFICATE OF SERVICE

I, John M. Flick, Esquire, hereby certify that I have this day served a true copy of the foregoing by mailing said copy, first class, postage prepaid to Defendant's attorney, Jonathan Sigel at Bowditch & Dewey, LLP, 311 Main Street, Worcester, MA 01615.

John M. Flick, Esquire